UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION | : | CIVIL ACTION NO. |
| Plaintiff | : | 3 02 CV 1824 AVC |
| | : | |
| VS. | : | |
| | : | |
| TOWN OF BRANFORD: GEORGETTE | : | |
| LASKE, MARGARET HALL, EDWARD | : | |
| MASOTTA, THOMAS WOODFORD and | : | |
| THE LEGION INSURANCE COMPANY | : | |
| Defendants | : | NOVEMBER 30, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

BACKGROUND

The plaintiff Westport Insurance Company (Westport) initiated this action against several defendants seeking a declaration that an insurance policy it issued does not apply to an underlying dispute. The Counterclaim of the defendant Connecticut Insurance Guaranty Association (CIGA) seeking the opposite declaration was filed on November 2, 2004.

I.    Pleadings

In the Complaint, the plaintiff avers that it issued a policy of insurance to John's Refuse Removal, Inc., policy number RF2020462. Complaint, ¶6. The plaintiff further alleges that this policy was in effect at the time of an accident resulting in injury to an

3

individual named John Barone. Complaint, ¶¶6, 10-11.The plaintiff further alleges that John Barone has sued the Town of Branford and certain of its officials for injuries arising out of the accident. Complaint, ¶10. In the Complaint, Westport alleges that its policy includes an additional insured endorsement naming the Town of Branford as an additional insured and providing in relevant part that

> WHO IS AN INSURED: (Section II) is amended to include as an insured the person or organization shown in the attached schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented by you.

Complaint, ¶8. Nevertheless, the plaintiff seeks a declaration that it owes no obligation to the Town of Branford or its officials with respect to the Complaint of John Barone. The defendants have not yet filed a responsive pleading, because the plaintiff obtained an order substituting CIGA for Legion Insurance Company as a defendant, but never filed a Substituted Complaint making allegations against CIGA. On October 14, 2004, the Court granted so much of the defendants' Motion to Compel or Dismiss as compelled the filing of a Substituted Complaint, but the plaintiff has failed to comply.

The Counterclaim allegations build upon the allegations of the Complaint, adding the allegations that John Barone was within the course of his employment for John's Refuse Removal, Inc. at the time of his injury on November 1, 2000; Counterclaim, ¶5; and that John Barone and John's Refuse Removal, Inc. were performing the obligation of

4

a contract with the Town of Branford at the time of the injury. Counterclaim, ¶¶7 & 8. CIGA further alleges that the contract between John's Refuse Removal, Inc, and the Town of Branford obligates John's Refuse Removal, Inc. to save harmless the Town from any claims on account of injuries received in the performance of the obligations of John's Refuse Removal, Inc. and to name the Town as an additional insured on its liability policy with limits of $1,000,000. Counterclaim, ¶¶8-10. The Counterclaim further identifies CIGA's interest as the statutory successor to the responsibilities of Legion Insurance Company, which had issued a policy of commercial liability insurance to the Town of Branford. Counterclaim, ¶16. The plaintiff has neglected to plead in response to the Counterclaim in a timely fashion.

II.    The Underlying Complaint.

The Complaint of John A. Barone (Underlying Complaint) is attached as Exhibit A to the appended Rule 56(a)(1) Statement. The First Count of the Underlying Complaint is against employees of the Town of Branford, while the Second Count is directed to the Town itself. In both Counts, the Underlying Complaint recites that at all relevant times, John A. Barone was an employee of John's Refuse Removal, Inc., a Connecticut corporation in the business of refuse removal. Underlying Complaint, ¶1. In that capacity, he picked up a container/dumpster filled with scrap and waste that had been packed with a compactor by the Town through its agents at the Town's Recycling Center/Transfer

5

Center. Underlying Complaint, ¶¶2, 4, 5. Mr. Barone further alleges that after transporting and offloading the container to The Marcus Paper Company, upon unpinning the door handle, suddenly and without warning, the door of the container flew open, striking and injuring him. Underlying Complaint, ¶¶6, 7.

The Underlying Complaint allegations that the Town and its employees were negligent in the following ways:

[Danielle, please type ¶8(a) through (d) here]

Each allegation references a risk of injury to persons, in the position of Mr. Barone, opening the door to the container.

III.    The Contract

Attached to the appended Rule 56(a)(1) Statement as Exhibit B is the Town of Branford Haul of Corrugated Cardboard Contract between the Town and John's Refuse Removal, Inc. (the Contract). The Contract obligates John's Refuse to provide equipment, consisting of a container that is compatible with the Town's compactor, and labor, to pull said containers to Marcus Paper Company, for the purpose of hauling corrugated cardboard from the Town's collection facility. Contract, Section I, ¶¶1, 4 and Section VIII, ¶1 & 2.

In Section VI, entitled Insurance, the Contract obligates John's Refuse Removal, Inc. to (1) provide general liability insurance coverage of $1,000,000 per occurrence, (2)

6

to save harmless the Town of Branford from all suits or actions brought against it for, or on account of, any injuries received or sustained by any party or parties in the performance of the obligations of John's Refuse Removal under the Contract, and (3) to list the Town of Branford as an additional insured on the insurance policy.

IV.    The Policy

As set forth in detail in the defendants' initial Motion for Summary Judgment, which is incorporated herein by reference, the plaintiff did not timely produce a copy of the insurance policy underlying this dispute and referenced in the plaintiff's Complaint. A copy of that policy, as hand delivered with a cover letter on November 19, 2004, is attached to the Local Rule 56(a)(1) Statement as Exhibit C.

The policy issued by Westport to John's Refuse Removal, Inc. (the Westport policy) includes a Commercial General Liability Coverage Form obligating Westport to pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. There is a correlating duty to defend any such claim. The Westport policy defines "you" as the Named Insured, John's Refuse Removal, Inc., and "insured" as any person or organization qualifying as such under Section II – Who Is An Insured.

Although the Complaint alleges that an Additional Insured Endorsement amends Section II by naming the Town of Branford as an additional insured, with coverage "only

7

with respect to liability arising out of your operations or premises owned by or rented by you," the documentation provided by Westport apparently establishes that this quoted endorsement was added to the Westport policy for the year prior to the loss. It is unclear whether Westport claims that the Town of Branford was therefore not named as an additional insured in the policy for the relevant policy year, in contradiction of its own allegations and in violation of John's Refuse Removal, Inc.'s contractual obligation to the Town, or whether Westport concedes that the endorsement carries on to the relevant policy year.

Without regard to the Additional Insured Endorsement, the Westport policy produced by counsel for Westport includes a General Liability Enhancement Endorsement (Serial No. WIC-3367 (03/98)). On page 6 of 7 under the heading "XIII ADDITIONAL INSUREDS BY WRITTEN CONTRACT", this Enhancement Endorsement adds the following paragraph to Section II defining Who Is An Insured:

> 5.    Any person, organization, trustee, or estate that has obligated you by written contract to provide the insurance that is afforded by this policy, but only with respect to liability arising out of "Your Work", "Your Product" and to property owned or used by you. However:
>
>    a.    This provision does not apply unless the written contract has been executed prior to the "bodily injury", "property damage", "personal injury" or "advertising injury";
>
>    b.    The Limits of Insurance applicable to the additional insured are those specified in the written contract or in the

8

Declarations for this policy, whichever are less. The limits of Insurance are inclusive of and not in addition to the Limits of Insurance shown in the Declarations.

ARGUMENT

I.    Standard for Summary Judgment

This court has recently reviewed the standard to be applied in addressing a summary judgment motion.

> Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. *See* Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Liberty Lobby, *supra*, at 247-48, 106 S.Ct. 2505 (emphasis original). The Supreme Court has noted that:

> > Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "One of the principal purposes of the summary judgment rule is to

9

isolate and dispose of factually unsupported claims... [and] it should be interpreted in a way that allows it to accomplish this purpose." <u>Celotex v. Catrett</u>, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"It is the function of the court to construe the provisions of the insurance contract and, if no material facts are at issue, the question of whether coverage exists is a question of law that is appropriately decided on a motion for summary judgment." <u>Peerless Ins. Co. v. Disla</u>, 999 F.Supp., 261, 263 (D.Conn.1998) (citing <u>Jurrius v. Maccabees Mut. Life Ins. Co.</u>, 587 F.Supp. 1301, 1305 (D.Conn.1984)).

<u>Metropolitan Prop. & Cas. Ins. Co. v. Espach</u>, 313 F.Supp.2d 109, 112-13 (D. Conn. 2002).

II.    Construction of the Insurance Policy

Construction of a contract of insurance presents a question of law for the court.

<u>Pacific Indemn. Ins. Co. v. Aetna Cas. & Sur. Co.</u>, 240 Conn. 26, 30 (1997). An insurance

policy is to be construed in accordance with the plain meaning of its terms, pursuant to

rules recently summarized:

Under well-settled Connecticut law, "[i]t is the function of the court to construe the provisions of the contract of insurance.... The [i]nterpretation of an insurance policy ... involves a determination of the intent of the parties as expressed by the language of the policy ... *[including] what coverage the ... [insured] expected to receive and what the [insurer] was to provide,* as disclosed by the provisions of the policy.... [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy ... [giving the] words ... [of the policy] their natural and ordinary meaning." <u>QSP, Inc. v. Aetna Casualty & Surety Co.</u>, 256 Conn. 343, 351-52, 773 A.2d 906, 913-14 (2001 (quoting <u>Springdale Donuts, Inc. v. Aetna Casualty & Surety Co.</u>, 247 Conn. 801, 805-06, 724 A.2d 1117, 1119-20 (1999 (emphasis ours). Although " 'any ambiguity in the

10

terms [of the policy must be construed] in favor of the insured,' " <u>QSP, Inc.</u>
<u>v. Aetna Casualty & Surety Co.</u>, 256 Conn. at 352, 773 A.2d at 914 (quoting
<u>Springdale Donuts, Inc. v. Aetna Casualty & Surety Co.</u>, 247 Conn. at 806,
724 A.2d at 1120)" '[a] necessary predicate to this rule of construction, ... is
a determination that the terms of the insurance policy are indeed
ambiguous,' " <u>QSP, Inc. v. Aetna Casualty & Surety Co.</u>, 256 Conn. at 352
n.11, 773 A.2d at 914 n.11 (quoting <u>Springdale Donuts, Inc. v. Aetna</u>
<u>Casualty & Surety Co.</u>, 247 Conn. at 806, 724 A.2d at 1120: *see also* <u>Israel</u>
<u>v. State Farm Mutual Automobile Insurance Co., 239 F.3d 127, 133 (2d Cir.</u>
<u>2000)</u>("Under Connecticut law, terms in a policy are to be construed from
the perspective of a reasonable layperson in the position of the purchaser
of the policy, ... and any ambiguity in the policy's terms must be construed
against the insurer as drafter of the contract.... On the other hand, these
rules may not be applied unless the terms or provisions in question are
indeed ambiguous ...." (internal quotation marks omitted)). A contract is not
ambiguous merely because different interpretations are advocated by the
parties. *See, e.g.,* <u>id.</u>; <u>QSP, Inc. v. Aetna Casualty & Surety Co.</u>, 256 Conn.
at 352 n. 11, 773 A.2d at 914 n. 11. Rather, it is ambiguous only when it is
reasonably susceptible to more than one reading. *See, e.g.,* <u>Metropolitan</u>
<u>Life Insurance Co. v. Aetna Casualty & Surety Co.</u>, 255 Conn. 295, 305,
765 A.2d 891, 897 (2001).

Where the terms of an insurance policy are unambiguous, the policy
language must be given its natural and ordinary meaning. *See, e.g.,*
<u>Cunningham v. Equitable Life Assurance Society</u>, 652 F.2d 306, 308 (2d
Cir. 1981); <u>QSP, Inc. v. Aetna Casualty & Surety Co.</u>, 256 Conn. at 351-52,
773 A.2d at 913-14; <u>Springdale Donuts, Inc. v. Aetna Casualty & Surety</u>
<u>Co.</u>, 247 Conn. at 806, 724 A.2d at 1102. Terms that are not defined in the
policy but are nonetheless clear "must [be] give[n] effect" in accordance
with "the reasonable and natural interpretation of such language." <u>Coregis</u>
<u>Insurance Co., v. American Health Foundation, Inc.</u>, 241 F.3d 123, 127 (2d
Cir. 2001); *see, e.g.,* <u>Hammer v. Lumberman's Mutual Casualty Co.</u>, 214
Conn. 573, 583, 573 A.2d 699, 704 (1990).

The determination of whether an insurance policy is ambiguous is a
matter of law for the court. *See, e.g.,* <u>QSP, Inc. v. Aetna Casulty & Surety</u>
<u>Co.</u>, 256 Conn. at 352, 773 A.2d at 914; <u>Metropolitan Life Insurance Co. v.</u>

11

Aetna Casualty & Surety Co., 255 Conn. at 305-06, 765 A.2d at 897.

State Farm Fire & Cas. Ins. Co. v. Sayles, 289 F.3d 181, 185 (2nd Cir. 2002)(applying Connecticut law).

III.    The Town of Branford is an Insured Under the Westport Policy Because the Underlying Complaint of John Barone States a Liability "Arising Out Of" the Operations of John's Refuse Removal, Inc. or, in the Alternative, "Arising Out Of" the Work or Products of John's Refuse Removal, Inc.

As set forth in the Underlying Complaint, John Barone was engaged in "the operations" of John's Refuse Removal, Inc. at the time of his injury, within the language of the Additional Insured Endorsement. Similarly, where the Westport policy defines "your work" as the work or operations performed by John's Refuse Removal, Inc. as well as materials, parts, or equipment furnished in connection with such work or operations, those same allegations plainly establish that John Barone was engaged in the work or operations of John's Refuse Removal, Inc. and operating the container furnished in connection with such work as referenced in the General Liability Enhancement Endorsement. Whether the Additional Insured Endorsement language or the General Liability Enhancement Endorsement language controls is therefore irrelevant. The issue, as raised by Westport in contesting its coverage obligation, is whether the injury "arises out of" the operations or work of the John's Refuse Removal, Inc. where the Underlying Complaint alleges negligence solely on the part of the party seeking additional insured

12

status and not negligence on the part of the named insured.

Cases around the country have approached this issue in two ways. The majority has held that the absence of negligence on the part of the named insured does not prevent the liability from "arising out of" the operations or work of the named insured, where there is a minimal causal nexus between the injury and the operations or work. A minority of opinions has held that the additional insured provision was not intended to protect a party from its own negligence. Respectfully, the majority position is consistent with Connecticut law and far better reasoned.

Under Connecticut law, the phrase "arising out of" signifies only a causal relation. Holy Trinity Church of God in Christ v. Aetna Cas. & Sur. Co., 214 Conn. 216, 223 n.5 (1990).

> "[I]t is generally understood that for liability for an accident or an injury to be said to 'arise out of' [an occurrence or offense], it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' [that occurrence or offense], in order to meet the requirement that there be a causal relationship between the accident or injury and [that occurrence or offense]." Hogle v. Hogle, 167 Conn. 572, 577, 356 A.2d 172 (1975), and cases cited therein. To "arise" out of means "to originate from a specified source." Webster's Third New International Dictionary (1961); see also Black's Law Dictionary (7th Ed.1999) (defining "arise" as "1. [t]o originate; to stem [from] ... 2.[t]o result [from]"). "The phrase arising out of is usually interpreted as indicat[ing] a causal connection." (Internal quotation marks omitted.) Coregis Ins. Co. v. American Health Foundation, 241 F.3d 123 (2d Cir. 2001); see also McGinniss v. Employers Reinsurance Corp., 648 F.Supp. 1263, 1267 (S.D.N.Y.1986).

13

QSP, Inc. v. Aetna Cas. & Sur. Co., 256 Conn. 343, 374 (2001). *Accord* Board of Education v. St. Paul Fire & Marine Ins. Co., 261 Conn. 37, 47-48 (2002); National Cas. Co. v. City of Stamford, 54 F.Supp.2d 127 (D.Conn. 1999).

Most cases in other jurisdictions apply a similar standard of minimal causation and conclude that this standard is satisfied when the liability of the party claiming additional insured status was connected with or was incident to the work of the named insured, without regard to negligence on the part of the named insured. For example, in McIntosh v. Scottsdale Ins. Co., 992 F.2d 251 (10th Cir. 1993), the plaintiff fell while attending a festival and sued the City of Witchita based a defect in the City's premises. Despite the claims of negligence on the part of the City, the court held that the City was entitled to status as an insured under the festival organization's insurance policy because the claim was one "arising out of" the festival's operations within the meaning of the insurance language. The court noted the broad scope of the phrase "arising out of," Id. at 255; and concluded that the language is not limited to claims of vicarious liability on the part of the additional insured. Id. at 254-55.

"The liberal interpretation of the additional insured endorsement by the McIntosh Court is fast becoming the majority rule." Richmond & Black, Expanding Liability Coverage: Insured Contracts and Additional Insureds, 44 Drake L. Rev. 781, 801 (1996). *Accord* Spevacek, Ledwith, Newman & Lennes, Additional Insured and Indemnification

14

Issues Affecting the Insurance Industry, Coverage Counsel and Defense Counsel - Legal

Advice and Practice Pointers, 52 FICC Quarterly 3, nn.13-16 and accompanying text

(2001) (available at http://www.thefederation.org/documents/spevacek.htm)("The majority

of the courts that have reviewed the language, however, construe it broadly, equating the

phrase 'arising out of' with causally connected with."); Oonk, The Construction Industry:

Coverage Issues Created by Claims Against Additional Insureds, 28 The Brief, No. 4, at

8, 11 (1999)("The emerging majority of courts broadly construe such language, equating

the phrase "arising out of" to causally connected with. Many cases flat out reject

arguments that coverage does not exist if the additional insured's liability arisses from its

own conduct or negligence, ie., in the absence of purely vicarious liability for the actions

of the named insured."); Comment, 23 Insurance L. Rptr. No. 5, p. 152

(2001)(referencing "the clear majority rule that under a Form B endorsement [providing

coverage for 'liability arising out of your operations performed for that insured'], an

additional insured has coverage even if the injury was caused by the additional insured's

sole negligence").

 Recognizing the broad scope of the phrase "arising out of", the courts have

concluded that

> Insurance companies are free to, and commonly have, issued additional
> insured endorsements that specifically limit coverage to situations in which
> the additional insured is faced with vicarious liability for negligent conduct

15

by the named insured. . . . We believe the better view is that when an insurer chooses not to use such clearly limited language in an additional insured clause, but instead grants coverage for liability "arising out of" the named insured's work, the additional insured is covered without regard to whether the injury was caused by the named insured or the additional insured.

Acceptance Ins. Co. v. Syufy Enterprises, 69 Cal. App. 4th 321, 330, 81 Cal.Rptr.2d 557 (1999).

Where, as here, an additional insurance endorsement provides coverage for liability "arising out of work," it is generally the rule that "any negligence by the additional insured in causing the accident underlying the claim is not material to the application of the additional insured endorsement"

LaFarge Bldg. Materials, Inc. v. J. Hall, Ltd., 771 N.Y.S.2d 210, 212 (A.D. 2004) (additional insured's special employment of person who dropped brick injuring plaintiff irrelevant where negligence of additional insured irrelevant). *Accord* Federal Home Loan Mortgage Corp v. Scottsdale Ins. Co., 316 F.3d 431, 443-45 (3rd Cir. 2003)(applying New Jersey law); Meadow Valley Contractors, Inc. v. Transcontinental Ins. Co., 2001 UT App. 190, 27 P.3d 594, 597-98 (2001); Township of Springfield v. Ersek, 660 A.2d 672, 676-77 (Pa. Cmwlth. 1995)("Had Phoenix sought to restrict coverage to only claims arising from the negligence of Ersek, it could have clearly so stated in the additional insured endorsement language, rather than stating that the Township was insured with "respect to liability arising out of Ersek's operations.")

John Barone's employment by John's Refuse Removal, Inc. serves only to solidify

16

the Town's status as an additional insured. That employment in and of itself virtually

guarantees the requisite relationship between the work of John's Refuse Removal, Inc.

and the Town's liability to trigger additional insured status on the part of the Town.

> One can conclude that unless the "additional insured" endorsement
> contains specific language limiting coverage to the additional insured on
> account of the "acts or omissions" or the "negligence" of the named insured,
> the coverage will be broadly construed by the court. Language in the
> standard forms that attempts to limit liability to exposure "arising out of" the
> negligence of the named insured will provide broad protection to the
> additional insured, as long as there is some nexus between the injury and
> the activities of the named insured. *If the injured party is an employee of the
> named insured and the 'arising out of' language is used, it is almost certain
> that coverage will be extended to the additional insured for both defense
> and indemnity provisions.*

Nelson, "Additional Insured" Endorsements: Conflicting Interpretations, 24 The Brief, No.

4 at 29, 72 (1995)(emphasis added). Moreover, the allegations of the Underlying

Complaint go well beyond the fact of employment in establishing that John Barone's

injury was connected or had some relationship with his employer's work for the Town.

There is nothing in the Westport policy that purports to limit the extension of insured

status only to claims by third parties or to exclude claims by employees of the named

insured. In the absence of such language, the cases have applied the policy provision as

written and found coverage for the additional insured. *See generally* Highland Park

Shopping Village v. Trinity Universal Ins. Co., 36 S.W.3d 916 (Tex. App. 2001); Union

Pacific RR Co. v. American Family Mutual Ins. Co., 987 S.W.2d 340, 345 (Mo. App.

17

1999); <u>Container Corp. of America v. Maryland Cas. Co.</u>, 707 So.2d 733 (Fla. 1998);

<u>Shell Oil v. AC&S. Inc.</u>, 217 Ill. App. 3d 898, 649 N.E.2d 946 (1995).

Most decisions reaching a contrary conclusion do so on the basis of different

insurance policy language. *See, e.g.*, <u>Cincinnati Ins. Co. v. Dawes Rigging & Crane</u>

<u>Rental Inc.</u>, 321 F.Supp.2d 975, 980-81 (C.D. Ill. 2004)(distinguishing other policy

language from language providing insured status for liability "arising out of" additional

insured's operations); <u>A. F. Lus Constr. v. Peerless Ins. Co.</u>, 847 A.2d 254 (R.I.

2004)(insurance language "with respect to" is distinguishable and narrower than liability

"arising out of"); <u>American Country Ins. Co. v. Cline</u>, 309 Ill. App. 3d 501, 722 N.E.2d 755

(1999)(additional insured endorsement language explicitly states that it "provides no

coverage to the Additional Insured for liability arising out of the claimed negligence of the

Additional Insured, other than which may be imputed to the Additional Insured by virtue

of the conduct of the Named Insured").

There are, however, a few decisions holding that a condition should be imputed

into the insurance policy language preventing a party from becoming an additional

insured with respect to that party's own negligence. *See, e.g.*, <u>Harbor Ins. Co. v. Lewis</u>,

562 F. Supp. 800 (E.D. Pa. 1983);[1] <u>Davis v. LTV Steel Corp.</u>, 128 Ohio App. 3d 733, 716

---

[1]

Although commonly cited as a leading authority for limiting additional insured

18

N.E.2d 766 (1998).[2] In doing so, these cases violate the basic principle applicable in

Connecticut law that a court will not read words or clauses into an insurance policy.

Hammer v. Lumberman's Mut. Cas. Co., 214 Conn. 573, 591 (1990) ("A court cannot

rewrite the policy of insurance or read into the insurance contract that which is not

there."); Moore v. Continental Cas. Co., 252 Conn. 405, 414 (2000). Indeed, any such

limitation would create an unjustified discrepancy between the contract, which expressly

---

status to vicarious liability based on the negligence of the named insured, the
Harbor Insurance case interpreted different language based on dubious expert
testimony and has been limited to its facts by the jurisdiction that issued it. See,
e.g., Maryland Cas. Co. v. Regis Ins. Co., 1997 WL 164268 *3-5 (E.D. Pa. 1997);
Pennsylvania Turnpike Comm'n v. Transcontinental Ins. Co., 1995 WL 465197 *5-
8 (E.D.Pa. 1995); Philadelphia Electric Co. v. Nationwide Mut. Ins. Co., 721
F.Supp. 740, 742 (E.D. Pa. 1989).

[2]

The law in Ohio is not uniform. Compare Stickovich v. City of Cleveland, 143 Ohio
App. 3d 13, 36-37, 757 N.E.2d 50 (2001). See also Westfield Cos. v. O.L.K. Can
Line, 155 Ohio App. 3d 747, 756, 804 N.E.2d 45 (2003)(broad interpretation of
"arising out of"). A limited interpretation of the additional insured exclusion in Ohio
appears to have been influenced by a statute prohibiting an agreement to
indemnify for one's own negligence. Buckeye Union Ins. Co. v. Zavarella Bros.
Constr. Co., 121 Ohio App. 3d 147, 699 N.E.2d 127(1997)(cited in Davis).
Connecticut has no such statute or public policy outside the construction field;
Connecticut General Statutes §52-572k; Burkle v. Car and Truck Leasing Co., 1
Conn. App. 54, 57 (1983); and there is, in any event, no public policy in
Connecticut (nor should there be elsewhere) against insuring for payment of
compensatory damages for one's own negligence. Compare Avis Rent A Car
System v. Liberty Mut. Ins. Co., 203 Conn. 667 (1987)(holding even punitive
damages insurable under certain circumstances).

19

HOWARD, KOHN SPRAGUE & FITZGERALD, LLP • ATTORNEYS-AT-LAW
237 BUCKINGHAM STREET • P.O. BOX 261798 • HARTFORD, CT 06126-1798 • (860) 525-3101 • JURIS NO. 28160

obligates John's Refuse Removal, Inc. to hold the Town harmless with respect to injury to "any party or parties" without exception for employees of John's Refuse Removal, Inc., and the Westport policy, which would leave John's Refuse Removal, Inc. without insurance protection for the full scope of its indemnity obligation. Such an interpretation is not consistent with the expectations of a reasonable layperson in the position of John's Refuse Removal, Inc. The purpose of insurance is to protect persons from their own negligence; there is no legitimate public policy rationale for artificially limiting the scope of an additional insured endorsement to exclude coverage because of the negligence of the additional insured. The plain meaning of the policy language protecting John's Refuse Removal, Inc. for the indemnification obligation it assumed in the contract should be enforced as written. *See* Sacharko v. Center Equities Ltd. Partnership, 2 Conn. App. 439, 445-46 (1984)(rejecting claim that additional insured status should not extend to additional insured's own negligence causing injury to named insured's employee).

Although it is the position of the defendants that the language of the policy plainly extends insured status to the Town of Branford with respect to the allegations of the Underlying Complaint of John Barone, to the extent there is any ambiguity with respect to the reach of the insurance policy language, that ambiguity must be interpreted in favor of finding coverage. Hansen v. Ohio Cas. Ins. Co., 239 Conn. 537, 548 (1996)("If an insurer uses language that is ambiguous, any uncertainty caused by that ambiguity will be

20

resolved against the insurer."). The plaintiff's alternate interpretation of the policy language would at best create ambiguity with regard to the meaning of the language that must be interpreted in favor of finding coverage for the Town of Branford.

IV.    If the Town of Branford is an Insured Under the Westport Policy, the Employees of the Town Are Entitled to the Protection of the Westport Policy.

Admittedly, neither the Additional Insured Endorsement nor the General Liability Enhancement Endorsement explicitly address the issue of coverage for the employees of the Town of Branford, as distinguished from coverage for the Town itself. However, in this context, the only allegation against the Town is pursuant to General Statutes §7-465, which obligates the Town to pay any judgment against its employees. It makes no sense to require the plaintiff to defend and indemnify the Town, but not the employees upon whose liability the Town's depends.

The Westport policy addresses the issue of Westport's obligation to indemnitees of an insured who are named as defendants in an underlying suit. In Section I, Coverages, under the heading Supplementary Payments – Coverages A and B, the Commercial General Liability Coverage Form, on page 6 of 12, obligates Westport to defend an indemnitee for which the insured has assumed the liability in a contract or agreement. The statutory obligation of the Town of Branford to assume the liability of its employees under certain circumstances should be considered such a contract or

21

agreement. At common law there was no municipal liability for the acts of its employees; Cone v. Waterford, 158 Conn. 276, 278-79 (1969); the municipality's obligation is thus something other than the restatement of an already existing liability. Although there is some contrary authority in other jurisdictions to the effect that a statutory indemnity obligation cannot satisfy the policy requirement of an "insured contract"; Lewis v. Hamilton, 652 So.2d 1327 (La. 1995); that authority does not arise in the context of a supplementary payments provision and fails to recognize that Connecticut's statute engrafts employee indemnification as a benefit of the employment contract, similar to other benefits of employment. "A fundamental purpose of the Statute is 'to free all municipal employees from liability for acts done in the performance of their duties by making the municipality responsible for their acts.'" Note, An Act Concerning Assumption By Municipalities of Liability for Employees, 32 Conn. B. J. 180, 180 (1958)(quoting Report of the Legislative Council – State of Connecticut 9, 10 (12/7/56)). Thus an employee obtains the benefit of statutory indemnification as incident to and an integral part of his contract of employment. The Town's obligation to its employees satisfies the requirements of the Supplementary Payments provision of the Westport policy and creates protection for the Town employees under that policy.

V.    The Obligation of Westport is Primary to Any Obligation on the Part of CIGA

Even if the officials of the Town of Branford are not directly entitled to the

22

protection of the Westport policy, because they have a right of indemnification against the

Town, the loss will ultimately fall upon the Town and its insurers. Under the usual

circumstance in which two insurers have similar coverage for the same insured, the

respective obligations of the insurers are determined by reference to the other insurance

clauses in the two policies. *See* Aetna Cas. & Sur. Co. v. CNA Ins. Co., 221 Conn. 779,

785 (1992).

However, the usual rule does not apply in this case. Legion Insurance Company,

the insurer that wrote the coverage for the Town's own insurance policy, has been

liquidated, and its obligations have been statutorily assumed by the Connecticut

Insurance Guaranty Association. That statutory assumption is specifically limited,

however. Connecticut General Statutes §38a-845 provides in pertinent part:

> (1) Any person having a claim against an insurer under any provision in any
> insurance policy, other than a policy of an insolvent insurer, which is also a
> covered claim under sections 38a-836 to 38a-853, inclusive, shall exhaust
> first his rights under such policy. Any amount payable on a covered claim
> under said sections shall be reduced by the amount recoverable under the
> claimant's insurance policy or chapter 568.

Under the terms of similar statutory provisions, courts have properly concluded that

Guaranty Association funds are not "other insurance" for purposes of allocating coverage

with any solvent insurer and that any available coverage through a solvent insurer is

primary to the obligations of the Association. *See, e.g.*, Harrow Stores, Inc. v. Hanover

23

Ins. Co., 315 N.J. Super. 547, 719 A.2d 196 (1998); Illinois Ins. Guar. Fund v. Farmland

Mut. Ins. Co., 274 Ill. App. 3d 671, 653 N.E.2d 856 (1995); Auto Ins. Assn v. Meridian

Mut. Ins. Co., 207 Mich. App. 37, 523 N.W.2d 821 (1994).

This conclusion is not inconsistent with the Connecticut Supreme Court's holding

in Connecticut Ins. Guar. Association v. Union Carbide Corp., 217 Conn. 371 (1991). In

Union Carbide, the Court held that the statute was intended to prevent double recovery

and therefore prevented CIGA from reducing its exposure due to payments by other

insurers that did not fully compensate the plaintiffs. The Union Carbide decision did not

address the question of primary versus secondary liability; indeed it appears that the

other insurers accepted that their exposure was primary, since they paid without waiting

for CIGA. CIGA's claim here, for a declaration that the obligations of Westport Insurance

Company are primary to its own, is entirely consistent with the Union Carbide decision

and effectuates the role of CIGA as insurer of last resort in order to preserve funds for the

public good.


CONCLUSION

For the foregoing reasons, the defendants respectfully maintain that they are

entitled to judgment as a matter of law declaring that Westport Insurance Company is

obligated to provide a defense and indemnification to the Town of Branford and its

24

officials, Margaret Hall, Edward Mosotta and Thomas Woodford, on a primary basis with

respect to the claim made against them by John Barone arising out of the incident of

November 1, 2000, together with such other relief as is set forth more fully in the Prayer

for Relief appended to the Counterclaim of the Connecticut Insurance Guaranty

Association.


THE DEFENDANTS


BY_____
Jack G. Steigelfest, Esq.
Howard, Kohn, Sprague & FitzGerald
Post Office Box 261798
Hartford, Connecticut  06126-1798
(860) 525-3101    Fed Bar # ct05733


25

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed, U.S. Mail - postage prepaid, on this the 30th day of November 2004, to:

Michael S. Taylor, Esq.
Horton, Shields & Cormier, P.C.
90 Gillett Street
Hartford, Connecticut  06105
(860) 522-8338

_____
Jack G. Steigelfest
Commissioner of the Superior Court

26