# HORTON, SHIELDS & KNOX, P.C.

ATTORNEYS AT LAW
90 GILLETT STREET
HARTFORD, CONNECTICUT 06105
(860) 522-8338

KENNETH J. BARTSCHI
KAREN L. DOWD
WESLEY W. HORTON
KIMBERLY A. KNOX
DANIEL J. KRISCH *
BRENDON P. LEVESQUE
ROBERT M. SHIELDS, JR.
MICHAEL S. TAYLOR
*ALSO ADMITTED IN NEW YORK

TELECOPIER
(860) 728-0401
MTAYLOR@hsklawfirm.com

HAND DELIVERED
November 19, 2004

Jack G. Steigelfest, Esq.
HOWARD, KOHN, SPRAGUE
        and FITZGERALD
P.O. Box 261987
Hartford, CT  06126

Re: Wesport Insurance – Town of Branford

Dear Attorney Steigelfest:

Enclosed please find a complete copy of Westport Insurance policy number RF2020462-1, effective January 11, 2000 through January 11, 2001. Please note that the town of Branford was not added as an additional insured on this policy. The town was added as an additional insured under a prior policy, number 2020462. The subject policy is a renewal of this prior policy. We are including the relevant policy change and additional insured endorsements from the prior policy for your reference.

Very truly yours,

Michael S. Taylor

MST:jt
enclosure

# Westport Insurance Corporation

Administrative Office
5200 METCALF
OVERLAND PARK, KS 66201
(913) 676-5270

Domiciliary Office
237 EAST HIGH STREET
JEFFERSON CITY, MO 65102

## COMMON POLICY DECLARATIONS

**POLICY NO: RF2020462-1**
**RENEWAL OF: RF2020462-0**

**PRODUCER NO.: 158181 - 0750**
Hollis D. Segur, Inc.
P.O. Box 631
255 Bank Street
Waterbury, CT 06720

**NAMED INSURED AND MAILING ADDRESS:**
John's Refuse Removal, Inc.
PO Box 520
Northford, CT 06472

**POLICY PERIOD: FROM 01/11/2000 TO 01/11/2001 AT**
12:01 A.M. Standard Time at your mailing address shown above

**FORM OF BUSINESS:** ___ Individual ___ Partnership ___ Joint Venture  X  Corporation
___ Organization (Other than Partnership)

**BUSINESS DESCRIPTION: Refuse Hauler**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | Premium |
|---|---|
| Commercial Auto Coverage Part | $ 56,640 |
| Commercial Crime Coverage Part | $ Not Covered |
| Commercial Garage Coverage Part | $ Not Covered |
| Commercial General Liability Coverage Part | $ 285 |
| Commercial Inland Marine Coverage Part | $ Not Covered |
| Commercial Property Coverage Part | $ 420 |
| Other: | $ |
| Other: | $ |
| Other: | $ |
| **TOTAL PREMIUM** (Includes $ 0 Tax and/or Surcharge) | $ 57,345 |

Premium Shown Is Payable: __ At Inception  X  See Premium Payment Schedule
Audit Period: Annual (*Unless otherwise Stated*) __ Monthly __ Quarterly __ Semi-Annual

**FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS:**

IL0003 (04-98), IL0017 (11-98), IL0260 (04-98), IL0021 (04-98), IL0022 (05-87), IL0143 (12-87), IL0935 (04-98), WIC IL-56 (02/98), WIC IL-61 (02/98), WIC IL-62 (02/98)

THESE DECLARATIONS TOGETHER WITH THE COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

COUNTERSIGNED _____ BY _____
                          (Date)                                    (Authorized Signature)

IN WITNESS WHEREOF, the Westport Insurance Corporation has caused this policy to be signed by its President and Secretary, but the same shall not be binding except in conjunction with a completed policy Declarations issued to the named insured to form a part of this policy.

*[signature]*
President

*[signature]*
Secretary

WIC-3000(02/98) - DEC

IL 00 03 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CALCULATION OF PREMIUM**

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    BUSINESSOWNERS POLICY
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY—NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

A. **Cancellation**
   1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
      a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
      b. 30 days before the effective date of cancellation if we cancel for any other reason.
   3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
   4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
   5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
   6. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. **Changes**
   This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

C. **Examination Of Your Books And Records**
   We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

D. **Inspections And Surveys**
   1. We have the right to:
      a. Make inspections and surveys at any time;
      b. Give you reports on the conditions we find; and
      c. Recommend changes.
   2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
      a. Are safe or healthful; or
      b. Comply with laws, regulations, codes or standards.
   3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
   4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

E. **Premiums**
   The first Named Insured shown in the Declarations:
   1. Is responsible for the payment of all premiums; and
   2. Will be the payee for any return premiums we pay.

F. **Transfer Of Your Rights And Duties Under This Policy**
   Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

   If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

GU 519 (11-98)

POLICY NUMBER: RF2020462-1                                                                 IL 02 60 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The Cancellation Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation of policies in effect for less than 60 days.

   If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. Cancellation of policies in effect for 60 days or **more.**

   a. If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

         (a) Nonpayment of premium;

         (b) Conviction of a crime arising out of acts increasing the hazard insured against;

         (c) Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim thereunder;

         (d) Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or

         (e) A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

      (2) 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

         (a) Physical changes in the property which increase the hazard insured against;

         (b) A material increase in the hazard insured against; or

         (c) A substantial loss of reinsurance by us affecting this particular line of insurance.

   b. We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph 3.a. above.

   c. If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment

IL 02 60 04 98

    in full at any time prior to the effective date of cancellation.

    d.  Notice of Cancellation will be delivered or sent by:

        (1)  Registered mail;

        (2)  Certified mail; or

        (3)  Mail evidenced by a United States Post Office certificate of mailing.

4.  We will give notice to you at your last mailing address known to us.

5.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7.  If notice is mailed, proof of mailing will be sufficient proof of notice.

B.  The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1.  If we decide not to renew this policy, we will mail or deliver to you a written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

2.  This notice will be delivered or sent by:

    a.  Registered mail;

    b.  Certified mail; or

    c.  Mail evidenced by a certificate of mailing.

    If notice is mailed, proof of mailing is sufficient proof of notice.

3.  However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

4.  With respect to automobile liability insurance policies only, your policy shall terminate on the effective date of any other insurance policy you purchase with respect to any automobile designated in both policies.

IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (Broad Form)

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS POLICY
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
> UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

GU 507 (4-98)

IL 00 21 04 98

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 00 22 05 87

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EFFECTIVE TIME CHANGES – REPLACEMENT OF 12 NOON**

This endorsement modifies the COMMON POLICY DECLARATIONS.

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

Copyright, Insurance Services Office, Inc., 1987

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

A. The **CANCELLATION** Common Policy Condition is replaced by the following:

   **CANCELLATION**

   1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
   2. Cancellation of policies in effect for less than 60 days.
      a. If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:
         (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
         (2) 30 days before the effective date of cancellation if we cancel for any other reason.
      b. Unless cancellation is for nonpayment of premium, notice of cancellation will state the reasons for cancellation.
   3. Cancellation of policies in effect for 60 days or more.
      a. If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:
         (1) 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:
            (a) Nonpayment of premium;
            (b) Conviction of a crime arising out of acts increasing the hazard insured against;
            (c) Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim under the policy;
            (d) Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or
            (e) A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or
         (2) 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:
            (a) Physical changes in the property which increase the hazard insured against;
            (b) A material increase in the hazard insured against; or
            (c) A substantial loss of reinsurance by us affecting this particular line of insurance.
      b. We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph 3.a. above.
      c. If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.
      d. Unless cancellation is for nonpayment of premium, notice of cancellation will state the reasons for cancellation.
      e. Notice of Cancellation will be sent or delivered by:
         (1) Registered Mail;
         (2) Certified Mail; or
         (3) Mail evidenced by a United States Post Office certificate of mailing.
   4. We will give notice to you at your last mailing address known to us.
   5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
   6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund. Notice of cancellation will state that the excess premium (if not tendered) will be refunded on demand.
   7. If notice is mailed, proof of mailing will be sufficient proof of notice.

B. The following are added to the APPRAISAL Loss Condition:

1. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal.
2. If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.

C. The **MORTGAGE HOLDERS** Additional Condition is replaced by the following:
**MORTGAGE HOLDER INTERESTS AND OBLIGATIONS**
If loss hereunder is made payable, in whole or in part, to a designated mortgage holder not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgage holder a ten days' written notice of cancellation.
If you fail to render proof of loss such mortgage holder, upon notice, shall render proof of loss in the form specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If we claim that no liability existed as to the mortgagor or owner, we shall, to the extent of payment of loss to the mortgage holder, be subrogated to all the mortgage holder's rights of recovery, but without impairing mortgage holder's rights to sue; or we may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgage holder may be added hereto by agreement in writing.

D. The following are added:
1. If any conditions of the Connecticut Standard Fire Policy, (Connecticut Statutes, Chapter 38, Section 98) are construed to be more liberal than any other policy condition, the conditions of Connecticut Standard Fire Policy will apply.
2. **NONRENEWAL**
   a. If we decide not to renew this policy we will mail or deliver to you a written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.
   b. This notice will be delivered or sent by:
      (1) Registered mail;
      (2) Certified mail; or
      (3) Mail evidenced by a certificate of mailing.
      If notice is mailed, proof of mailing is sufficient proof of notice.
   c. However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

Copyright, Insurance Services Office, Inc., 1987
Copyright, ISO Commercial Risk Services, Inc., 1987

POLICY NUMBER: RF2020462

IL 09 35 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    STANDARD PROPERTY POLICY

A. We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  1. The failure, malfunction or inadequacy of:

    a. Any of the following, whether belonging to any insured or to others:

      (1) Computer hardware, including microprocessors;

      (2) Computer application software;

      (3) Computer operating systems and related software;

      (4) Computer networks;

      (5) Microprocessors (computer chips) not part of any computer system; or

      (6) Any other computerized or electronic equipment or components; or

    b. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph A.1.a. of this endorsement;

  due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in paragraph A.1. of this endorsement.

B. If an excluded Cause Of Loss as described in paragraph A. of this endorsement results:

  1. In a Covered Cause Of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  2. Under the Commercial Property Coverage Part:

    a. In a "Specified Cause Of Loss" under the Causes Of Loss—Special Form; or

    b. In a Covered Cause Of Loss under the Causes Of Loss—Basic Form or the Causes Of Loss—Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause Of Loss" or Covered Cause Of Loss.

C. We will not pay for repair, replacement or modification of any items in paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

GU 513 (4-98)
IL 09 35 04 98

Copyright, Insurance Services Office, Inc., 1997

# Westport Insurance Corporation

### PREMIUM PAYMENT SCHEDULE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured: **John's Refuse Removal, Inc.**

Policy Number: **RF2020462-1**

Policy Period: From **01/11/2000** to **01/11/2001**

Total Premium of $ **57,345** is payable as follows:

| Payment # | Date Due | Premium Due |
|---|---|---|
| 1 | 01/11/2000 | $5,739.00 |
| 2 | 02/11/2000 | $5,734.00 |
| 3 | 03/11/2000 | $5,734.00 |
| 4 | 04/11/2000 | $5,734.00 |
| 5 | 05/11/2000 | $5,734.00 |
| 6 | 06/11/2000 | $5,734.00 |
| 7 | 07/11/2000 | $5,734.00 |
| 8 | 08/11/2000 | $5,734.00 |
| 9 | 09/11/2000 | $5,734.00 |
| 10 | 10/11/2000 | $5,734.00 |

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)
**Endorsement Effective**   01/11/2000      **Policy No.**   RF2020462-1
**Named Insured**   John's Refuse Removal, Inc.

*WESTPORT INSURANCE CORPORATION*

Countersigned.

...................................................
Authorized Representative

President          Secretary

# Westport Insurance Corporation

### LEGAL ACTION AGAINST US ENDORSEMENT
(Damages Recoverable, Liability for Attorney's Fees)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:
    COMMERCIAL AUTO COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    TRUCKERS COVERAGE PART

The following is added to the Legal Action Against Us Condition(s) or Suit(s) Condition(s):

1. In the event of any breach of the provisions of this policy or of any express or implied covenant herein, including any implied covenant of good faith and fair dealing, whether done unreasonably, wantonly, maliciously, oppressively, despicably, or in whatever state of mind, the damages recoverable shall be limited to (a) the economic loss caused thereby, and (b) where allowed by law, punitive damages where a party has been found beyond a reasonable doubt to have committed fraud or to have intentionally inflicted harm, but such punitive damages shall be limited to no more than three times the amount of the actual economic damages, exclusive of attorneys' and arbitrators' fees and expenses, caused thereby.

2. In any "suit" or arbitration brought by you or us by reason of a disagreement concerning any rights or obligations under this insurance, the prevailing party shall recover all legal costs, including attorneys' fees reasonably incurred in prosecuting or defending the arbitration or "suit."

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)
**Endorsement Effective**    01/11/2000    **Policy No.**    RF2020462-1
**Named Insured**    John's Refuse Removal, Inc.

*WESTPORT INSURANCE CORPORATION*

Countersigned.

.................................................
Authorized Representative

President        Secretary

WIC IL-61 (02/98)        Page 1 of 1

**Westport Insurance Corporation**

### DEDUCTIBLE REIMBURSEMENT ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

DEDUCTIBLE LIABILITY INSURANCE ENDORSEMENT

1. With respect to our agreement to pay claims within the deductible amounts on your behalf, you agree to reimburse us within 30 days after reimbursement is requested for such part of the deductible amount as has been paid by us.

2. If you do not reimburse us within 30 days:

    (a) Effective the date of the first loss for which the deductible amount was not reimbursed, the deductible will no longer apply; and

    (b) Effective the date of the first loss for which the deductible amount was not reimbursed, the premium will be increased pro rata by the deductible factor used to calculate the reduced premium; and

    (c) The additional premium developed by this calculation will be due and payable to us within 10 days of notice.

3. Your failure to pay the additional premium will result in cancellation of the policy for non-payment of the premium.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)
**Endorsement Effective**   01/11/2000         **Policy No.**   RF2020462-1
**Named Insured**   John's Refuse Removal, Inc.

*WESTPORT INSURANCE CORPORATION*

Countersigned.

..................................................
Authorized Representative

_[signature]_          _[signature]_
President              Secretary

Westport Insurance Corporation

5200 Metcalf, Overland Park, KS 66201-1379
(913) 676-5270  Facsimile (913) 676-5780

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

POLICY NO:     RF2020462-1

NAMED INSURED: John's Refuse Removal, Inc.

LIMITS OF INSURANCE:

| | |
|---|---:|
| GENERAL AGGREGATE LIMIT<br>(Other Than Products/Completed Operations) | $2,000,000 |
| PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 |
| EACH OCCURRENCE LIMIT | $1,000,000 |
| FIRE DAMAGE LIMIT - Any One Fire | $100,000 |
| MEDICAL EXPENSE LIMIT - Any One Person | $5,000 |
| LIQUOR LIABILITY EACH COMMON CAUSE LIMIT | Not Covered |
| LIQUOR LIABILITY AGGREGATE LIMIT | Not Covered |

RETROACTIVE DATE (CG 00 02 only)

COVERAGE A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below

Retroactive Date:     **NONE**
                     (Enter Date or "None" if no Retroactive Date applies.)

LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:

1. 1100 Middletown Avenue, North Branford, CT  06471

| Classification | Code No | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| Garbage, Ash Or Refuse Collecting | 95233 | P) 10,400 | Incl | 26.295 | Incl | $285 |
| | | | | Total | Incl | $285 MP |

FORMS AND ENDORSEMENTS APPLICABLE:

CG0001 (07-98), CG0057 (09-99), CG2147 (07-98), CG2149 (09-99), CG2160 (09-98), WIC-3367 (03/98)

THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAMED INSURED AND THE POLICY PERIOD.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1  Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

      (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:
  (a) Less than 26 feet long; and
  (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.