# HORTON, SHIELDS & KNOX, P.C.

### ATTORNEYS AT LAW
90 GILLETT STREET
HARTFORD, CONNECTICUT 06105
(860) 522-8338

KENNETH J. BARTSCHI
KAREN L. DOWD
WESLEY W. HORTON
KIMBERLY A. KNOX
DANIEL J. KRISCH *
BRENDON P. LEVESQUE
ROBERT M. SHIELDS, JR.
MICHAEL S. TAYLOR
*ALSO ADMITTED IN NEW YORK

TELECOPIER
(860) 728-0401
MTAYLOR@hsklawfirm.com

HAND DELIVERED
November 19, 2004

Jack G. Steigelfest, Esq.
HOWARD, KOHN, SPRAGUE
    and FITZGERALD
P.O. Box 261987
Hartford, CT  06126

Re:    Wesport Insurance – Town of Branford

Dear Attorney Steigelfest:

Enclosed please find a complete copy of Westport Insurance policy number RF2020462-1, effective January 11, 2000 through January 11, 2001. Please note that the town of Branford was not added as an additional insured on this policy. The town was added as an additional insured under a prior policy, number 2020462. The subject policy is a renewal of this prior policy. We are including the relevant policy change and additional insured endorsements from the prior policy for your reference.

Very truly yours,

Michael S. Taylor

MST:jt
enclosure

## Westport Insurance Corporation

Administrative Office
5200 METCALF
OVERLAND PARK, KS  66201
(913) 676-5270

Domiciliary Office
237 EAST HIGH STREET
JEFFERSON CITY, MO  65102

# COMMON POLICY DECLARATIONS

**POLICY NO: RF2020462-1**
**RENEWAL OF: RF2020462-0**

**PRODUCER NO.: 158181 - 0750**
Hollis D. Segur, Inc.
P.O. Box 631
255 Bank Street
Waterbury, CT  06720

**NAMED INSURED AND MAILING ADDRESS:**
John's Refuse Removal, Inc.
PO Box 520
Northford, CT  06472

**POLICY PERIOD: FROM 01/11/2000   TO 01/11/2001            AT**
12:01 A.M. Standard Time at your mailing address shown above

**FORM OF BUSINESS:** ____ Individual ____ Partnership ____ Joint Venture __X__ Corporation
____ Organization (Other than Partnership)

**BUSINESS DESCRIPTION: Refuse Hauler**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | | Premium |
|---|---|---|
| Commercial Auto Coverage Part | $ | 56,640 |
| Commercial Crime Coverage Part | $ | Not Covered |
| Commercial Garage Coverage Part | $ | Not Covered |
| Commercial General Liability Coverage Part | $ | 285 |
| Commercial Inland Marine Coverage Part | $ | Not Covered |
| Commercial Property Coverage Part | $ | 420 |
| Other: | $ | |
| Other: | $ | |
| Other: | $ | |
| TOTAL PREMIUM  (Includes $ 0 Tax and/or Surcharge) | $ | 57,345 |

Premium Shown Is Payable:  __  At Inception  __X__ See Premium Payment Schedule

Audit Period: Annual (*Unless otherwise Stated*) __ Monthly __ Quarterly __ Semi-Annual

**FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS:**

IL0003 (04-98), IL0017 (11-98), IL0260 (04-98), IL0021 (04-98), IL0022 (05-87), IL0143 (12-87), IL0935 (04-98), WIC IL-56 (02/98), WIC IL-61 (02/98), WIC IL-62 (02/98)

THESE DECLARATIONS TOGETHER WITH THE COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

COUNTERSIGNED _____   BY _____
(Date)                                          (Authorized Signature)

IN WITNESS WHEREOF, the Westport Insurance Corporation has caused this policy to be signed by its President and Secretary, but the same shall not be binding except in conjunction with a completed policy Declarations issued to the named insured to form a part of this policy.

President

Secretary

WIC-3000(02/98) - DEC

IL 00 03 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART

BUSINESSOWNERS POLICY

COMMERCIAL AUTOMOBILE COVERAGE PART

COMMERCIAL CRIME COVERAGE PART

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COMMERCIAL INLAND MARINE COVERAGE PART

COMMERCIAL PROPERTY COVERAGE PART

EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART

FARM COVERAGE PART

LIQUOR LIABILITY COVERAGE PART

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

POLLUTION LIABILITY COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

PROFESSIONAL LIABILITY COVERAGE PART

RAILROAD PROTECTIVE LIABILITY COVERAGE PART

SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY—NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 03 04 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 1

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98          Copyright, Insurance Services Office, Inc., 1998          Page 1 of 1

POLICY NUMBER: RF2020462-1

IL 02 60 04 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The Cancellation Common Policy Condition is replaced by the following:

CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation of policies in effect for less than 60 days.

   If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. Cancellation of policies in effect for 60 days or **more.**

   **a.** If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

   (1) 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

   (a) Nonpayment of premium;

   (b) Conviction of a crime arising out of acts increasing the hazard insured against;

   (c) Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim thereunder;

   (d) Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or

   (e) A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

   (2) 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

   (a) Physical changes in the property which increase the hazard insured against;

   (b) A material increase in the hazard insured against; or

   (c) A substantial loss of reinsurance by us affecting this particular line of insurance.

   **b.** We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph 3.a. above.

   **c.** If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment

IL 02 60 04 98                    Copyright, ISO Commercial Risk Services, Inc., 1998

IL 02 60 04 98

in full at any time prior to the effective date of cancellation.

    **d.**  Notice of Cancellation will be delivered or sent by:

        **(1)**  Registered mail;

        **(2)**  Certified mail; or

        **(3)**  Mail evidenced by a United States Post Office certificate of mailing.

**4.**  We will give notice to you at your last mailing address known to us.

**5.**  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.**  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**7.**  If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.**  The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.**  If we decide not to renew this policy, we will mail or deliver to you a written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

**2.**  This notice will be delivered or sent by:

    **a.**  Registered mail;

    **b.**  Certified mail; or

    **c.**  Mail evidenced by a certificate of mailing.

    If notice is mailed, proof of mailing is sufficient proof of notice.

**3.**  However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

**4.**  With respect to automobile liability insurance policies only, your policy shall terminate on the effective date of any other insurance policy you purchase with respect to any automobile designated in both policies.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright Insurance Services Office, Inc. 1997

IL 00 22 05 87

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EFFECTIVE TIME CHANGES – REPLACEMENT OF 12 NOON**

This endorsement modifies the COMMON POLICY DECLARATIONS.

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

Copyright, Insurance Services Office, Inc., 1987
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 00 22 05 87

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONNECTICUT CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**A.** The **CANCELLATION** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation of policies in effect for less than 60 days.

   **a.** If this policy has been in effect for less than 60 days and is not a renewal of a policy we issued, we may cancel this policy for any reason by giving you written notice of cancellation at least:

   (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   **b.** Unless cancellation is for nonpayment of premium, notice of cancellation will state the reasons for cancellation.

3. Cancellation of policies in effect for 60 days or more.

   **a.** If this policy has been in effect for 60 days or more or this is a renewal of a policy we issued, we may cancel this policy by giving you written notice of cancellation at least:

   (1) 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

   (a) Nonpayment of premium;

   (b) Conviction of a crime arising out of acts increasing the hazard insured against;

   (c) Discovery of fraud or material misrepresentation by you in obtaining the policy or in perfecting any claim under the policy;

   (d) Discovery of any willful or reckless act or omission by you increasing the hazard insured against; or

   (e) A determination by the Commissioner that continuation of the policy would violate or place us in violation of the law; or

   (2) 60 days before the effective date of cancellation if we cancel for one or more of the following reasons:

   (a) Physical changes in the property which increase the hazard insured against;

   (b) A material increase in the hazard insured against; or

   (c) A substantial loss of reinsurance by us affecting this particular line of insurance.

   **b.** We may not cancel policies in effect for 60 days or more or renewal policies for any reason other than the reasons described in Paragraph 3.a. above.

   **c.** If we cancel for nonpayment of premium, you may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation.

   **d.** Unless cancellation is for nonpayment of premium, notice of cancellation will state the reasons for cancellation.

   **e.** Notice of Cancellation will be sent or delivered by:

   (1) Registered Mail;

   (2) Certified Mail; or

   (3) Mail evidenced by a United States Post Office certificate of mailing.

4. We will give notice to you at your last mailing address known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund. Notice of cancellation will state that the excess premium (if not tendered) will be refunded on demand.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following are added to the APPRAISAL Loss Condition:

Copyright, Insurance Services Office, Inc., 1987
Copyright, ISO Commercial Risk Services, Inc., 1987

1. You and we must notify the ___ der of the appraiser selected within 20 days of the written demand for appraisal.

2. If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.

**C.** The **MORTGAGE HOLDERS** Additional Condition is replaced by the following:

**MORTGAGE HOLDER INTERESTS AND OBLIGATIONS**

If loss hereunder is made payable, in whole or in part, to a designated mortgage holder not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgage holder a ten days' written notice of cancellation.

If you fail to render proof of loss such mortgage holder, upon notice, shall render proof of loss in the form specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If we claim that no liability existed as to the mortgagor or owner, we shall, to the extent of payment of loss to the mortgage holder, be subrogated to all the mortgage holder's rights of recovery, but without impairing mortgage holder's rights to sue; or we may pay off the mortgage debt and require an assignment thereof and

of the mortgage. ___ her provisions relating to the interests and obligations of such mortgage holder may be added hereto by agreement in writing.

**D.** The following are added:

1. If any conditions of the Connecticut Standard Fire Policy, (Connecticut Statutes, Chapter 38, Section 98) are construed to be more liberal than any other policy condition, the conditions of Connecticut Standard Fire Policy will apply.

2. **NONRENEWAL**

   **a.** If we decide not to renew this policy we will mail or deliver to you a written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date of this policy. The notice will be sent to your address last known to us.

   **b.** This notice will be delivered or sent by:
   
   **(1)** Registered mail;
   
   **(2)** Certified mail; or
   
   **(3)** Mail evidenced by a certificate of mailing. If notice is mailed, proof of mailing is sufficient proof of notice.

   **c.** However, we are not required to send this notice if nonrenewal is due to your failure to pay any advance premium required for renewal.

Copyright, Insurance Services Office, Inc., 1987

POLICY NUMBER: RF2020462-(                                   (               IL 09 35 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

   **1.** The failure, malfunction or inadequacy of:

      **a.** Any of the following, whether belonging to any insured or to others:

         **(1)** Computer hardware, including micro-processors;

         **(2)** Computer application software;

         **(3)** Computer operating systems and related software;

         **(4)** Computer networks;

         **(5)** Microprocessors (computer chips) not part of any computer system; or

         **(6)** Any other computerized or electronic equipment or components; or

      **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph A.1.a. of this endorsement;

      due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

**2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in paragraph A.1. of this endorsement.

**B.** If an excluded Cause Of Loss as described in paragraph A. of this endorsement results:

   **1.** In a Covered Cause Of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

   **2.** Under the Commercial Property Coverage Part:

      **a.** In a "Specified Cause Of Loss" under the Causes Of Loss—Special Form; or

      **b.** In a Covered Cause Of Loss under the Causes Of Loss—Basic Form or the Causes Of Loss—Broad Form;

   we will pay only for the loss ("loss") or damage caused by such "Specified Cause Of Loss" or Covered Cause Of Loss.

**C.** We will not pay for repair, replacement or modification of any items in paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

Copyright, Insurance Services Office, Inc., 1997

# *Westport Insurance Corporation*

### PREMIUM PAYMENT SCHEDULE ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Named Insured: **John's Refuse Removal, Inc.**

Policy Number: **RF2020462-1**

Policy Period:  From **01/11/2000**           to **01/11/2001**

Total Premium of $ **57,345**           is payable as follows:

| Payment # | Date Due | Premium Due |
|:---:|:---:|:---:|
| 1 | 01/11/2000 | $5,739.00 |
| 2 | 02/11/2000 | $5,734.00 |
| 3 | 03/11/2000 | $5,734.00 |
| 4 | 04/11/2000 | $5,734.00 |
| 5 | 05/11/2000 | $5,734.00 |
| 6 | 06/11/2000 | $5,734.00 |
| 7 | 07/11/2000 | $5,734.00 |
| 8 | 08/11/2000 | $5,734.00 |
| 9 | 09/11/2000 | $5,734.00 |
| 10 | 10/11/2000 | $5,734.00 |

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)
**Endorsement Effective**        01/11/2000              **Policy No.**      RF2020462-1
**Named Insured**      John's Refuse Removal, Inc.

*WESTPORT INSURANCE CORPORATION*

Countersigned.

.................................................
Authorized Representative

President                         Secretary

# *Westport Insurance Corporation*

## LEGAL ACTION AGAINST US ENDORSEMENT
### (Damages Recoverable, Liability for Attorney's Fees)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTO COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    TRUCKERS COVERAGE PART

The following is added to the Legal Action Against Us Condition(s) or Suit(s) Condition(s):

1. In the event of any breach of the provisions of this policy or of any express or implied covenant herein, including any implied covenant of good faith and fair dealing, whether done unreasonably, wantonly, maliciously, oppressively, despicably, or in whatever state of mind, the damages recoverable shall be limited to (a) the economic loss caused thereby, and (b) where allowed by law, punitive damages where a party has been found beyond a reasonable doubt to have committed fraud or to have intentionally inflicted harm, but such punitive damages shall be limited to no more than three times the amount of the actual economic damages, exclusive of attorneys' and arbitrators' fees and expenses, caused thereby.

2. In any "suit" or arbitration brought by you or us by reason of a disagreement concerning any rights or obligations under this insurance, the prevailing party shall recover all legal costs, including attorneys' fees reasonably incurred in prosecuting or defending the arbitration or "suit."

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

**Endorsement Effective**    01/11/2000        **Policy No.**    RF2020462-1
**Named Insured**    John's Refuse Removal, Inc.

*WESTPORT INSURANCE CORPORATION*

Countersigned.

..................................................
Authorized Representative             President           Secretary

# *Westport Insurance Corporation*

## DEDUCTIBLE REIMBURSEMENT ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### DEDUCTIBLE LIABILITY INSURANCE ENDORSEMENT

1.     With respect to our agreement to pay claims within the deductible amounts on your behalf, you agree to reimburse us within 30 days after reimbursement is requested for such part of the deductible amount as has been paid by us.

2.     If you do not reimburse us within 30 days:

   (a)   Effective the date of the first loss for which the deductible amount was not reimbursed, the deductible will no longer apply; and

   (b)   Effective the date of the first loss for which the deductible amount was not reimbursed, the premium will be increased pro rata by the deductible factor used to calculate the reduced premium; and

   (c)   The additional premium developed by this calculation will be due and payable to us within 10 days of notice.

3.     Your failure to pay the additional premium will result in cancellation of the policy for non-payment of the premium.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

**Endorsement Effective**       01/11/2000              **Policy No.**      RF2020462-1
**Named Insured**      John's Refuse Removal, Inc.

*WESTPORT INSURANCE CORPORATION*

Countersigned.

............................................................
   Authorized Representative                        President                        Secretary

*Fairport Insurance Corporation*

*5200 Metcalf, Overland Park, KS 66201-1379*
*(913) 676-5270  Facsimile (913) 676-5780*

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

**POLICY NO:**    **RF2020462-1**

**NAMED INSURED: John's Refuse Removal, Inc.**

**LIMITS OF INSURANCE:**

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations) | $2,000,000 |
| PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 |
| EACH OCCURRENCE LIMIT | $1,000,000 |
| FIRE DAMAGE LIMIT - Any One Fire | $100,000 |
| MEDICAL EXPENSE LIMIT - Any One Person | $5,000 |
| LIQUOR LIABILITY EACH COMMON CAUSE LIMIT | Not Covered |
| LIQUOR LIABILITY AGGREGATE LIMIT | Not Covered |

**RETROACTIVE DATE** (CG 00 02 only)

COVERAGE A  of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below

Retroactive Date:    **NONE**

(Enter Date or "None" if no Retroactive Date applies.)

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:**

**1. 1100 Middletown Avenue, North Branford, CT  06471**

| Classification | Code No | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| Garbage, Ash Or Refuse Collecting | 95233 | P) 10,400 | Incl | 26.295 | Incl | $285 |
| | | | Total | | Incl | $285 MP |

**FORMS AND ENDORSEMENTS APPLICABLE:**

**CG0001 (07-98), CG0057 (09-99), CG2147 (07-98), CG2149 (09-99), CG2160 (09-98), WIC-3367 (03/98)**

THESE DECLARATIONS ARE PART OF THE COMMON POLICY DECLARATIONS CONTAINING THE NAMED INSURED AND THE POLICY PERIOD.

WIC-3301(03/96) - DEC

Page 1 of 1