UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | NO. 3:02 CV 1824 AVC |
| | : | |
| TOWN OF BRANFORD, GEORGETTE LASKE, MARGARET HALL, EDWARD MASOTTA, THOMAS WOODFORD and THE CONNECTICUT INSURANCE GUARANTY ASSOCIATION, | : | |
| Defendants | : | DECEMBER 21, 2004 |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Westport Insurance Corporation ("Westport"), hereby respectfully submits this memorandum of law in opposition to the defendants' motion for summary judgment. For the reasons set forth below, and those articulated in the plaintiff's Memorandum in Support of its Motion for Summary Judgment, the plaintiff urges this Court to deny the defendants' Motion for Summary Judgment and to enter Judgment in favor of the plaintiff.

BACKGROUND

Westport commenced this declaratory judgment action seeking a judgment that it has no duty to defend or indemnify defendants the Town of Branford ("the Town") or its agents Georgette Lasky, Margaret Hall, Edward Mazzotta and Thomas Woodford for claims made against them in an underlying action captioned John Barone vs. Town of Branford, et al., currently pending in the Connecticut Superior Court, Judicial District of New Haven at New

Haven and bearing docket number CV-02-0462959-S. The parties to the instant action filed cross motions for summary judgment on November 30, 2004.

The question on which this case turns is whether or not the Town and its agents are additional insureds under the Westport policy for the purpose of the Barone claim. The Town and its agents are insureds under the Westport policy *only* for liability arising out of the work, operations, premises or products of John Barone's (Barone) employer, John's Refuse Removal, Inc. (John's Refuse). Because the underlying complaint alleges absolutely no such liability, the Town and its agents are not entitled to coverage. Further, the Westport policy explicitly excludes coverage for bodily injury to employees of the insured. Because the underlying complaint clearly alleges that Barone was an employee of the named insured, it is clear that Westport has no duty to defend. Further, when the language of the Supplemental Payments section is construed, it becomes clear that Westport has no duty to defend the employees of the town. Accordingly, the plaintiffs respectfully urge this court to deny the defendant's motion for summary judgment and to grant the plaintiffs' motion for summary judgment.

ARGUMENT

I. The Town of Branford Is Not an Insured Under the Westport Policy Because the Underlying Complaint of John Barone Fails to Allege Liability "Arising Out Of" the Operations of John's Refuse Removal, Inc. or "Arising Out Of" the Work or Products of John's Refuse Removal, Inc

Because the Barone complaint fails to allege any facts which would bring the alleged injuries within the coverage of the policy, Westport has no duty to defend the Town or its agents. Westport will only have a coverage obligation if the allegations of the Barone complaint trigger the policy provisions, including the additional insured provisions. They do not.

The General Liability Enhancement Endorsement adds the Town as an additional insured because the Town is "[a]n organization . . . that has obligated you [John's Refuse] by written contract to provide the insurance that is afforded by this policy." But the Town is an insured "only with respect to liability arising out of "Your Work" [or] "Your Product."

The policy specifically defines "you" and "your" to refer to the named insured shown in the declarations, i.e. John's Refuse. The policy defines "your work" as:

    a.    Work or operations performed by you or on your behalf; and

    b.    Materials, parts or equipment furnished in connection with such work or operations.

The policy defines "your product" as:

    a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You;

        (2)    Others trading under your name; or

        (3)    A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

In order to trigger the provisions of the additional insured provision, the liability must have arisen out of the work or products of John's Refuse. "It is generally understood that for liability for an accident or an injury to be said to 'arise out of' [an occurrence or offense], it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' [that occurrence or offense], in order to meet the requirement that there be a causal relationship between the accident or injury and [that

occurrence or offense]. . . . To "arise" out of means "to originate from a specified source. . . . The phrase arising out of is usually interpreted as indicat[ing] a causal connection. . . . Simply because we recognize, however, the breadth of the term "arising out of" and often interpret coverage ambiguities in favor of the insured does not mean that we will "obligate an insurer to extend coverage based ... [upon] a reading of the complaint that is ... conceivable but tortured and unreasonable." (Citations omitted; internal quotation marks omitted.) QSP, Inc. v. Aetna Casualty & Surety Company, 256 Conn. 343, 374 (2001).

In this case, the purpose of the additional insured endorsement is to protect the Town from being vicariously liable for the tortious acts of John's Refuse. See Davis v. LTV Steel Company, Inc., 128 Ohio App. 3d 733, 737, 716 N.E.2d 766 (1998). The purpose, as is plain from the policy language, is *not* to indemnify the Town for its own negligence. Simply stated, the additional insured endorsement was to protect the Town from being held vicariously liable for the tortious acts of John's Refuse. The facts alleged in the complaint do not allege that the Town is vicariously liable for the acts of John's Refuse. Therefore the additional insured provision is not triggered and there is no duty to defend the Town.

The Barone complaint does not contain any allegations which could support a finding of liability "arising out of" the operations, work or products of John's Refuse. Although the Connecticut Supreme Court has construed the phrase "arising out of" liberally, Connecticut still requires a minimal causal connection. A tenuous connection between the work of John's Refuse and Barone's injuries is insufficient to impose liability on Westport. See e.g. Farm Bureau Mut. Ins. Co., Inc. v. Evans, 7 Kan. App. 2d 60, 637 P.2d 491, 494 (1981) (rejecting strict "but for causation"). In his complaint Barone must allege that the injury originated in,

grew out of or flowed from the work of John's Refuse. Board of Education v. St. Paul Fire & Marine Ins. Co., 261 Conn. 37, 48 (2002).

In this case, the absence of any alleged connection between Barone's injuries and the work of John's Refuse fails to trigger the provisions of the additional insured policy because Barone fails to allege that his injury originated in, grew out of, or flowed from the work of John's Refuse. The allegations of the complaint make it clear that all of the relevant activity occurred on either the Town's property or at the premises of Marcus Paper. As a matter of fact, the Barone complaint is devoid of any reference to the goods, products, work or operations of John's Refuse. The sole claim of negligence is against the Town of Branford, in that its agents overloaded the compactor and set the pressure at a level higher than the standard specifications. Any liability for the injuries sustained by Barone arose solely from the Town's negligence and not out of the work of John' Refuse. Under these circumstances, the express language of the policy does not afford coverage to the Town.

Moreover, loading the container with cardboard is not alleged to have been connected in any way with the work or property of John's Refuse and is not alleged to have been the responsibility of John's Refuse. The complaint alleges only that the container was loaded by the Town and its agents and that the injuries suffered by Barone were a result of the negligence of the Town. John's Refuse had absolutely no role in, or responsibility for, the loading of that container and the complaint alleges only that the injury was caused by the negligent loading of the container. Therefore, any injuries arising from that act could not have arisen out of the operations, work or property of John's Refuse.

Indeed, the complaint alleges *nothing* about the operations, work or property of John's Refuse. The complaint *does not* allege that Barone was performing the duties of his employment at the time of his injury, it *does not* allege that he was engaged in conduct related to the operations of John's Refuse or even what those operations may have been. Without speculation, there is no way to draw a connection between the operations, work or property of John's Refuse and the injuries allegedly suffered by Barone.

Further, it is important to note that it is insufficient that Barone's *injury* be somehow connected with his employment. Rather, the policy requires that the *liability* for the alleged injury arose out of the operations, work or property of John's Refuse. The Barone complaint does not allege any *liability* related to John's Refuse in the specified manner (or in any other).

The argument propounded by the defendants, distilled to its essence, is that on the basis of Barone's employment with John's Refuse, the Town should be an additional insured for any injuries sustained by Barone. Taken to its logical extreme, this argument would require insurance companies in Westport's position to provide coverage for virtually any injury that occurred, irrespective of causation, to an employee who was at work. This would essentially eviscerate the terms, conditions and limitations of the policy and therefore could not have been the intent of the parties to the agreement.

Furthermore, Connecticut has a strongly analogous public policy within the construction field that should be equally applicable here. Connecticut General Statutes §52-572k(a)[1] invalidates an agreement which provides for indemnification for the indemnitee's sole

---

[1]Section 52-572k(a) provides: "Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances

negligence. This public policy compels a reading of the additional insured provision in which the sole negligence of the Town would not trigger the additional insured provisions. A reading to the contrary, allowing the Town to be insured for its own negligence runs afoul of the aforementioned public policy.

II. <u>The Terms of the Employer is Liability Exclusion Eliminates Coverage</u>

Even if the Barone complaint contained allegations sufficient to trigger the additional insured language on behalf of the Town and its agents, the policy still would not provide coverage for Barone's claim as it constitutes a claim of bodily injury to an employee of the insured.

"In ascertaining the meaning of the terms of the insured's policy, we . . . are guided by well established principles. The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor

---

thereto including moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the negligence of such promisee, such promisee's agents or employees, is against public policy and void, provided this section shall not affect the validity of any insurance contract, workers' compensation agreement or other agreement issued by a licensed insurer."

of the insured because the insurance company drafted the policy. . . .  A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . .  The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous.  Moreover, [t]he provisions of the policy issued by the defendant cannot be construed in a vacuum. . . .  They should be construed from the perspective of a reasonable layperson in the position of the purchaser of the policy."  Community Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co., 254 Conn. 387, 399-400 (2000).  The purpose of an exclusion in an insurance policy is to remove or exclude something from coverage that would otherwise have been covered.  Liberty Mut. Ins. Co. v. Am. Emp. Ins. Co., 556 S.W.2d 242, 245 (Tex.1977).

In its supplemental motion for summary judgment, the defendant states, "[t]here is nothing in the Westport policy that purports . . . to exclude claims by employees of the named insured."  (Defendant's Supplemental Motion for Summary Judgment, p. 16) Contrary to the defendants' statement, the Employer's Liability Exclusion clearly operates to exclude claims by employees of the named insured.  The exclusion eliminates coverage for bodily injury to "[a]n employee of the insured arising out of and in the course of:  (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . . .  This exclusion applies:  (1) Whether the insured may be liable as an employer or in any other capacity . . . ."  (Policy page 2.)  This clause, when read in its entirety, is clear and definite, and, this being so, a construction may not be adopted which conflicts with the plain language.  See United Nat'l Ins. Co. v. Waterfront New York Realty Corp., 994 F.2d 105 (2d Cir. 1993).

The Barone complaint alleges that at all relevant time, Barone was an employee of John's Refuse.  Because John's Refuse is the named insured under the policy, Barone's claim for bodily injury constitutes a claim of bodily injury to the insured.  Indeed, the defendant's claim for additional insured status hinges, if anything, on the argument that Barone was in the employ of John's Refuse.  Only a substantial twisting of the policy language could result in a construction where Barone's status as an employee was sufficient to trigger the additional insured provisions but insufficient to trigger the employer's liability exclusion.  "[W]e will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . ." (Internal quotation marks omitted.) Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, 247 Conn. 801, 809 (1999).  Because the underlying complaint alleges a liability which the policy does not cover, the plaintiff is not required to defend.

III.    The Employees of the Town of Branford Are Not Entitled to the Protection of the Westport Policy

The defendants concede, as they must, that neither the Additional Insured Endorsement nor the General Liability Enhancement Endorsement specifically address the issue of coverage for the employees of the Town of Branford.  If the parties intended that employees of the Town of Branford would be afforded coverage under the policy they could have added a provision which specifically provided for coverage.

The policy addresses the issue of Westport's obligation to indemnitees of an insured who are named in an underlying suit.  Section I, Coverages, under the heading Supplementary Payments – Coverages A and B, the Commercial General Liability Coverage Form, on page 6 of 12, obligates Westport to defend an indemnitee if *all* of six conditions are met:

    a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an 'insured contract. . . .;

    b. This insurance applies to such liability assumed by the insured.

    c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appear to exist between the interest of the insured and the interests of the indemnitee;

    e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    f. The indemnitee:

        (1) Agrees in writing to:

            (a) Cooperate with us in the investigation settlement or defense of the "suit";

            (b) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "suit";

            (c) Notify any other insurer whose coverage is available to the indemnitee; and

            (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        (2) Provide us with written authorization to:

            (a) Obtain records and other information related to the "suit"; and

            (b) Conduct and control the defense of the indemnitee in such suit"

The critical inquiry in this case is whether the employment relationship falls within the specific policy definition of "insured contract." Here, the insured has not assumed the liability of the town employees in a contract or agreement that is an "insured contract." Section V-

Definitions defines an "insured contract" as: "f. That part of any *other* contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement. . . ." (Emphasis added.)

Generally, the concept of "insured contract" "contemplates an agreement to undertake liability 'which did not exist prior to the assumption.' Lewis v. Hamilton, 652 So. 2d 1327, 1330 (La. 1995); *see generally* Douglas R. Richmond and Darren S. Black, *Expanding Liability Coverage: Insured Contracts and Additional Insureds*, 44 Drake L. Rev. 781, 784 (1996)." John Deere Insurance Co. v. De Smet Ins. Co. of South Dakota, 650 N.W.2d 601, 607 (2002).

The defendant argues that, although not specifically stated in the policy, the Town of Branford's statutory obligation to assume the liability of its employees should be considered such a contract or agreement. The defendants' desire to have something which is not expressly stated read into the terms of the policy violates a fundamental tenet of Connecticut law which provides that a court will not read words or clauses into an insurance policy. Hammer v. Lumberman's Mut. Cas. Co., 214 Conn. 573, 591 (1990) ("A court cannot rewrite the policy of insurance or read into the insurance contract that which is on there").

In Lewis v. Hamilton, 652 So. 2d 1327, 1330 (La. 1995) the Louisiana Supreme court held that an employment relationship between a school board and a teacher, was not an "insured contract" by which the School Board "assume[d] the tort liability of another." Id., 1330. The court focused on the definition of "assume" when it concluded that the word

"assume" as used in the policy "requires some exercise of volition on the part of the insured to undertake or incur liability which did not exist prior to the assumption." Id. The court concluded that the employment contract merely gave rise to the status of the School Board as an employer and it was the law governing that status, and not any contractual assumption of liability, which made the School Board liable for the employee's tort. Id.

Although Lewis was not construing a supplementary payments provision, the rationale is applicable to this case. The employment contract here merely gave rise to the status of the Town as the employer. It is the law governing that relationship, General Statutes § 7-465, which would make the Town liable for any negligence on the part of its employees, not any contractual assumption of liability. Because the Town has not assumed the liability of the indemnitee in a contract or agreement that is an 'insured contract' the employees of the town are entitled to the protections of the Westport policy.

WHEREFORE, for the above-stated reasons, the plaintiff respectfully urges this Court to deny the defendants motion for summary judgment and enter summary judgment in its favor.

PLAINTIFF

BY_______________________________

MICHAEL S. TAYLOR
**Horton, Shields & Knox, P.C.**
90 Gillett Street
Hartford, CT 06105
(860) 522-8338
*fax* (860) 728-0401
Fed. Bar ID#CT 14650
mtaylor@hsklawfirm.com

# CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on December 21, 2004 to the following:

Jack G. Steigelfest, Esq.
**Howard, Kohn, Sprague & FitzGerald**
P. O. Box 2617898
Hartford, CT 06126

____________________________________
MICHAEL S. TAYLOR