UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION | : | CIVIL ACTION NO. |
|     Plaintiff | : | 3 02 CV 1824 AVC |
| | : | |
| VS. | : | |
| | : | |
| TOWN OF BRANFORD: GEORGETTE LASKE, MARGARET HALL, EDWARD MASOTTA, THOMAS WOODFORD and THE LEGION INSURANCE COMPANY | : | |
|     Defendants | : | DECEMBER 30, 2004 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

The defendants respectfully submit this brief memorandum in reply to four dubious arguments found in Westport Insurance Company's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [hereinafter Opposition Memorandum].

1. <u>Westport's Interpretation of the Additional Insured Provision Would Render the Provision Illusory</u>

On page 4 of its Opposition Memorandum, Westport argues that "[s]imply stated, the additional insured endorsement was to protect the Town from being held vicariously liable for the tortious acts of John's Refuse." From the undisputed facts, however, it is apparent that the Town could never be vicariously liable for the tortious acts of John's Refuse, rendering the additional insured provision a nullity under that interpretation.

As set forth in the Contract attached to each side's Rule 56(a)(1) Statement and

alleged in the underlying complaint of John Barone, John's Refuse contracted to haul refuse for the Town. Under such circumstances, the Town is not vicariously liable for the tortious conduct of John's Refuse.

> As a general rule, "an employer is not liable for the negligence of its independent contractors. Douglass v. Peck & Lines Co., 89 Conn. 622, 627, 95 A. 22 (1915); W. Prosser & W. Keeton, Torts (5th Ed.1984) § 71, p. 509; 41 Am.Jur.2d, Independent Contractors § 29 (1995)." Gazo v. Stamford, 255 Conn. 245, 256-57, 765 A.2d 505 (2001); Alexander v. Sherman's Sons Co., 86 Conn. 292, 298, 85 A. 514 (1912); 2 Restatement (Second), Torts § 409, p. 370 (1965). "The explanation for [this rule] most commonly given is that, since the employer has no power of control over the manner in which the work is to be done by the contractor, it is to be regarded as the contractor's own enterprise, and [the contractor], rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it." 2 Restatement (Second), *supra,* § at 409, comment (b).

Pelletier v. Sordoni/Skanska Construction Co., 264 Conn. 509, 517-18 (2003). Although the Town may be liable for its own conduct, because its conduct somehow contributed to an injury, Westport's proposed interpretation of the insurance policy language limiting the Town to additional insured status only for vicarious liability with respect to the waste disposal activities of John's Refuse renders the status of additional insured illusory. Connecticut courts will not interpret policy language to render coverage largely illusory. Northrop v. Allstate Ins. Co., 247 Conn. 242, 251 (1998).

2.   The Supposed Silence of the Complaint Does Not Benefit Westport

On page 6 of its Opposition Memorandum, Westport argues that certain

2

allegations are not found in the Underlying Complaint of Mr. Barone, and therefore concludes that the Underlying Complaint fails to create an obligation on the part of Westport. Westport's argument, however, is not in accordance with Connecticut law.

"[T]he duty to defend is triggered whenever a complaint alleges facts that **potentially** could fall within the scope of coverage. . .." DaCruz v. State Farm Fire & Cas. Co., 268 Conn. 675, 688 (2004)(emphasis in original). "If an allegation of the complaint falls even possibly within the coverage, then the [insurer] must defend the insured." Wentland v. American Equity Ins. Co., 267 Conn. 592, 600 (2004)(citations and quotation marks omitted). Although the Court should eschew a strained, implausible reading of the complaint that is linguistically conceivable, but tortured and unreasonable; Schilberg Integrated Metals Corp. v. Continental Cas. Co., 263 Conn. 245, 260 (2003); the inverse is also true. The Court should adopt any reasonable interpretation of the complaint allegations that would support a finding of coverage.

The Underlying Complaint of John Barone includes the following allegations in each Count:

> 1. At all times mentioned herein, the plaintiff, John A. Barone was an employee of John's Refuse Removal, Inc., a Connecticut Corporation engaged in the business of hauling refuse.
>
>         *     *     *
>
> 4. On or about November 1, 2000, the plaintiff, John A. Barone picked up a container/dumpster filled with scrap and waste cardboard from the

3

> [Town's] Transfer Station, (hereinafter the "Container") which had been packed by the Town of Branford, its' agents, servants, and/or employees, acting within the scope of their authority to do so.
>
>           \*      \*      \*
>
> 6.    On said date, the plaintiff transported the Container from the Transfer Station to the defendant. The Marcus Paper Company, 93 Wood Street, West Haven, Connecticut.
>
> 7.    At said time and place, the plaintiff began offloading the Container and upon unpinning the door handle, suddenly and without warning, the door flew open striking the plaintiff in the head and face, causing him serious injuries and damages, hereafter set forth.

It is in the face of these allegations that Westport argues that the complaint alleges nothing about the operations of John's Refuse, that the complaint does not allege that John Barone was performing the duties of his employment at the time of his injury and that he was not engaged in conduct related to the operations of John's Refuse, or even what those operations may have been. Opposition Memorandum at 6. With due respect, it is Westport, not the defendants, that argues for a strained and unreasonable reading of the Underlying Complaint. The allegations and the reasonable inferences from them directly relate John Barone's injury to the operations of John's Refuse; indeed, it is a reasonable inference that only someone engaged in the waste hauling operations of John's Refuse would have been in a position to be injured while opening the door to the container, which according to the Contract, was a product supplied by John's Refuse. The absence of further reference to John's Refuse in the Complaint is due to the plaintiff's

4

inability to sue John's Refuse because of the exclusive remedy rule of the workers compensation laws, not the absence of any involvement of John's Refuse Removal; the defendants request that this Court take judicial notice that John's Refuse Removal, Inc. is an intervening plaintiff in the underlying action. *See, e.g.*, Mourning v. Zyrenda, 2004 WL 1774628, *1 n. 2 (D. Conn. 2004)("The Court takes judicial notice of cases filed in this Court and in state court as well as rulings and pleadings filed in those cases).

3.     Westport's Doomsday Scenario is Unwarranted

On page 6 of the Opposition Memorandum, Westport argues that the defendant's argument, taken to its extreme, would require insurers in the position of Westport to provide coverage for virtually any injury that occurred, irrespective of causation, to an employee who was at work. In proffering this doomsday scenario, Westport ignores the underpinnings of the defendants' claim to additional insured status.

The defendants are entitled to status as additional insureds because John's Refuse entered a contract promising them status as additional insureds, and Westport included in its policy an additional insured provision that effectuates the promise of its named insured. Rather than obligate Westport with respect to any injury to an employee at work, the policy language obligates Westport to protect the defendants with respect to any injury to anyone with a minimal causal connection to the work of John's Refuse, without regard to whether the injured party happens to be an employee of John's Refuse. Had Westport

5

wanted to limit this obligation to exclude employees of John's Refuse, it had the opportunity to include such limiting language in the additional insured provision or in the employer's liability exclusion, or elsewhere in the policy. Having failed to do so, it should not be heard to complain that its policy means what it says.

4.   There is No Public Policy Against Insuring for One's Own Negligence

On pages 6 and 7 of the Opposition Memorandum, Westport claims that General Statutes §52-572k(a), invalidating agreements in the construction field that provide for indemnification of the results of the indemnitee's sole negligence, is a "strongly analogous public policy" that should apply equally here. Respectfully, Westport is far off base.

First, Westport's argument ignores Connecticut law. In Sacharko v. Center Equities Ltd. Parthership, 2 Conn. App. 439, 445-46 (1984), the Court expressly rejected the claim that additional insured status should not extend to Center Equities for liability predicated upon its own negligence. Rather, the Court recognized that the purpose of insurance is to protect against negligence and that the insurance policy should be interpreted in a manner consistent with its evident purpose as expressed in its terms, without extra-contractual limitation of the type suggested by Westport.

Connecticut law also addresses Westport's improper attempt to extend General Statutes §52-572k beyond indemnification agreements to insurance arrangements. In Best Friends Pet Care, Inc. v. Design Learned, Inc., 77 Conn. App. 167 (2003), the Court

6

determined that the statute did not invalidate waiver of subrogation and insurance clauses in a construction contract that had the effect of allocating the obligation to insure for negligence in the work.

> Ultimately, we find persuasive, as did the trial court, the distinction made by the New Hampshire Supreme Court in Chadwick v. CSI, Ltd., 137 N.H. 515, 629 A.2d 820 (1993). In Chadwick, the court distinguished between exculpatory provisions, which were forbidden by New Hampshire common law, and allocation of risk provisions, such as the kind found in the AIA contract. Id., at 523, 629 A.2d 820. "These [AIA provisions] do not present the same concerns as naked exculpatory provisions. As opposed to exculpatory provisions ... the insurance provisions of the standard AIA contract are not designed to unilaterally relieve one party from the effects of its future negligence, thereby foreclosing another party's avenue of recovery. Instead, they work to ensure that injuries or damage incurred during the construction project are covered by the appropriate types and limits of insurance, and that the costs of that coverage are appropriately allocated among the parties." (Citations omitted.) Id.

Although the law is not uniform, many cases have similarly recognized that statutes or public policies limiting the right to indemnification for one's own negligence have no application to contractual obligations to provide insurance for that negligence. *See, e.g.*, Great American Ins. Co. v. West Bend Mut. Ins. Co., 311 Ill.App.3d 524, 539, 723 N.E.2d 1174 (2000); Pickhover v. Smith's Management Corp., 771 P.2d 664 (Utah App. 1989); Sentry Ins. Co. v. National Steel Corp., 147 Mich. App. 214, 220-21, 382 N.W.2d 753 (1985); Cone Bros. Contracting Co. v. Ashland-Warren, Inc., 458 So.2d 851, 855 (Fla. App. 1984). In short, "there is no demonstrable public policy favoring a narrow

7

interpretation of additional insured clauses." <u>Fireman's Fund Ins. Cos. v. Atlantic Richfield Co.</u>, 94 Cal.App.4th 842, 853, 115 Cal.Rptr.2d 26 (2001).

Finally, Westport's effort to imply a general public policy against indemnification agreements from a statutory proscription limited to the construction field is again inconsistent with Connecticut law. In <u>Burkle v. car & Truck Leasing Co.</u>, 1 Conn. App. 54 (1983), the indemnitor argued that a contract provision outside the construction field broad enough to require indemnification for the indemnitee's own negligence was void pursuant to the public policy expressed in General Statutes §52-572k. The Court found the statute to have the opposite effect.

> Rather than buttressing the argument of voidness on public policy grounds, the effect of this statute is just the opposite. The legislature, in specifically outlawing hold harmless agreements in the construction industry, showed an intention that such a practice not be deemed against public policy in other situations, for had the legislature intended to outlaw all such provisions as against public policy, it could have said so.

<u>Burkle</u>, 1 Conn. App. at 58.

Conclusion

For the foregoing reasons, as well as those previously set forth in the defendants' previous filings, the defendants respectfully request that summary judgment enter in their favor declaring, that they are additional insured entitled to the protection of the Westport policy.

8

THE DEFENDANTS

BY_____
Jack G. Steigelfest, Esq.
Howard, Kohn, Sprague & FitzGerald
Post Office Box 261798
Hartford, Connecticut  06126-1798
(860) 525-3101    Fed Bar # ct05733

## CERTIFICATION

  I hereby certify that a copy of the foregoing was mailed, U.S. Mail - postage prepaid, on this the 30th day of December 2004, to:

Michael S. Taylor, Esq.
Horton, Shields & Cormier, P.C.
90 Gillett Street
Hartford, Connecticut  06105
(860) 522-8338

            _____
            Jack G. Steigelfest
            Commissioner of the Superior Court