## DISTRICT OF CONNECTICUT

```
WESTPORT INSURANCE CORP.,       :
    Plaintiff,                  :
                                :
v.                              :    3:02CV1824(AVC)
                                :
TOWN OF BRANFORD, GEORGETTE     :
LASKE, MARGARET HALL, EDWARD    :
MASOTTA, THOMAS WOODFORD and    :
THE CONNECTICUT INSURANCE       :
GUARANTY ASSOCIATION,           :
    Defendants.                 :
```

### RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is a diversity action for equitable relief brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  It arises out of an insurance policy ("policy") that the plaintiff, Westport Insurance Corporation ("Westport"), issued to John's Refuse Removal Incorporated ("John's Refuse").  Specifically, the parties seek a declaratory judgment determining whether Westport has a duty to defend and indemnify the defendants, the Town of Branford ("Town") and four of its employees, as additional insureds under the policy with regard to a pending underlying state action ("underlying state action") that an employee of John's Refuse has brought against the Town and Town employees.

The parties have filed the within cross-motions for summary judgment (document nos. 41, 44).  Westport seeks a declaratory judgment "declaring that it has no obligation to provide a defense or indemnification" to the Town or the individual defendants in the underlying state action.  Specifically, Westport argues that the policy covers the Town and its agents

"only for liability arising out of work or products" of John's Refuse whereas the complaint in the underlying state action "alleges absolutely no liability arising out of the work or products" of John's Refuse. In addition, Westport argues that the policy "specifically excludes coverage for bodily injury to employees of the insured."

In contrast, the defendants argue "that they are entitled to summary judgment as a matter of law on [Westport's] [c]omplaint and their [c]ounterclaim." Specifically, the defendants argue that the Town and individual defendants "fall within the definition of insureds or are otherwise entitled to the protection of" the policy. Furthermore, one of the defendants, the Connecticut Guaranty Insurance Association ("CIGA"), seeks a declaratory judgment "declaring that Westport . . . is obligated to provide a defense and indemnification of the Town . . . and its officials . . . on a primary basis with respect" to the underlying state action.[1]

---

[1] More specifically, CIGA's counterclaim seeks a declaratory judgment declaring: (1) the Town "is an insured" under the policy "with respect to the claim made against it" in the underlying state action; (2) Westport "is obligated to provide a defense and indemnification" to the Town, Hall, Masotta, and Woodford in the underlying state action; (3) Westport's "obligation . . . to provide a defense and indemnification" to the Town, Hall, Masotta, and Woodford in the underlying state action "is primary to the obligation on the part" of CIGA; and (4) CIGA is entitled to reimbursement from Westport for "the costs contributed by CIGA to the defense" and indemnification of the Town, Hall, Masotta, and Woodford in the underlying state action.

The issues presented are: (1) whether Westport has a duty to defend the Town with regard to the underlying state action; (2) whether Westport has a duty to defend the individual defendants with regard to the underlying state action; (3) whether Westport has a duty to indemnify the Town and the individual defendants with regard to the underlying state action; (4) if the policy does cover the Town or the individual defendants with respect to the underlying state action, whether Westport's duty to defend or indemnify is primary to CIGA's duty to defend or indemnify; and (5) whether CIGA is entitled to reimbursement from Westport for CIGA's defense and indemnification of the Town and the individual defendants in the underlying state action.

The court concludes: (1) Westport has a duty to defend the Town because (a) the underlying state action "arises out of" the work of John's Refuse, and (b) the employer's liability exclusion does not preclude coverage because the policy contains a severability of interests provision; (2) Westport does not have a duty to defend the individual defendants because the Town did not assume liability for them through an "insured contract;" (3) Westport has a duty to indemnify the Town but does not have a duty to indemnify the individual defendants;(4) Westport's coverage of the Town is primary to CIGA's coverage; and (5) Westport is liable to CIGA for the reasonable expenses CIGA has incurred in defending and indemnifying the Town.

Westport's motion for summary judgment (document no. 41) is therefore GRANTED in part and DENIED in part.  The defendants' motion for summary judgment (document no. 44) is GRANTED in part and DENIED in part.

## FACTS

Examination of the complaint, Local Rule 56(a)(1) statements, exhibits, cross-motions for summary judgment, and the responses thereto reveals the following undisputed, material facts:

## The Parties

The plaintiff, Westport Insurance Company ("Westport"), is a Missouri Corporation with its principle place of business in Overland Park, Kansas.  Westport engages in the business of insurance in Connecticut.

The defendant, the Town of Branford ("Town"), is a municipal corporation organized pursuant to Connecticut law.  The individual defendants are Connecticut residents and employees of the Town.  Specifically, Margaret Hall is the director of the Town's recycling center, Edward Masotta is the Town's director of public works, Georgette Laske is the town clerk, and Thomas Woodford is the superintendent of the Town's recycling center(collectively "individual defendants").

The defendant and counterclaim plaintiff, the Connecticut Insurance Guaranty Association ("CIGA"), is a "nonprofit

4

unincorporated legal entity" established pursuant to the
Connecticut law.[2] See Conn. Gen. Stat. § 38a-839.  CIGA succeeded
to the responsibilities of the Town's insolvent insurer, the
Legion Insurance Company ("Legion), which originally issued the
Town a general commercial liability insurance policy.[3]

John's Refuse Removal, Inc. ("John's Refuse"), a Connecticut
corporation, is engaged in the business of hauling refuse in
Connecticut.  The plaintiff in the underlying state action, John
Barone, is an employee of John's Refuse.

---

[2] The Connecticut Insurance Guaranty Association Act, Conn. Gen. Stat.
§§ 38a-836 - 53, established CIGA "for the purpose of providing a limited form
of protection for policyholders and claimants in the event of insurer
insolvency. . . . . When an insurer becomes insolvent . . . the association
becomes obligated pursuant to § 38a-841, to the extent of covered claims
within certain limits." Hunnihan v. Mattatuck Mfg. Co., 243 Conn. 438, 451
(1997)(quoted in Doucette v. Pomes, et al., 247 Conn. 442, 454 (1998)).  The
Act provides, in relevant part, that CIGA "shall:"

  (a) Be obligated to the extent of the covered claims existing
  prior to the determination of insolvency [of the insurer] . . . .
  (b) be deemed the insurer to the extent of its obligations on the
  covered claims and to such extent shall have all rights, duties,
  and obligations of the insolvent insurer as if the insurer had not
  been insolvent . . . . (d) investigate claims brought against said
  association and adjust, compromise, settle, and pay covered claims
  to the extent of said association's obligations and deny all other
  claims . . . .

Conn. Gen. Stat. § 38a-841.

[3] Westport's original October 17, 2002 complaint named the Town's former
insurer, Legion Insurance Company, as a defendant. On June 21, 2004, however,
Westport filed a motion "for substitution of party defendant."  Specifically,
Westport argued that the court should allow it to substitute CIGA "as a
defendant in this action in place . . . of The Legion Insurance Company
("Legion")."  Westport stated that the substitution was necessary due to a
Pennsylvania court order "staying all action against Legion pending its
liquidation."  On July 14, 2004, the court granted Westport's motion to
substitute CIGA as a defendant absent objection. On November 30, 2004,
Westport filed an amended complaint naming CIGA as a defendant in place of
Legion.

**The Policy**

Westport issued a general commercial liability insurance policy to John's Refuse ("the policy").  The policy was effective from January 11, 2000 to January 11, 2001.  The policy's declarations page listed John's Refuse as the policy's "named insured."

The policy obligated Westport to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'[4] . . . to which this insurance applies." Furthermore, the policy stated that Westport has "the right and duty to defend the insured against any 'suit' seeking those damages."  The policy, however, stated that Westport "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury'. . . to which this insurance does not apply."

Section II of the policy defined "Who Is An Insured." Because John's Refuse is a corporation, section II provided,

> . . . you are an insured.  Your 'executive officers' and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

The policy defined the "words 'you' and 'your'" to mean "the Named Insured shown in the Declarations," i.e. John's Refuse, as well as "any other person or organization qualifying as a Named

---

[4] Section V of the policy defined bodily injury as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

6

Insured under this policy."

A subsequent "General Liability Enhancement Endorsement" broadened the definition of insureds under the policy. Specifically, section XII of the endorsement, entitled "Additional Insureds by Written Contract"("additional insured endorsement"), stated that in addition to the named insured, an insured is also

> [a]ny . . . organization . . . that has obligated you by written contract to provide the insurance that is afforded by this policy, *but only with respect to liability arising out of 'Your work', 'Your product' and to property owned or used by you*

(emphasis added). The policy defined "Your work" as "(a) Work or operations performed by you or on your behalf; and (b) Materials, parts or equipment furnished in connection with such work or operations."[5] The parties disagree as to whether the underlying state action arises out of John's Refuse's work, product, or property.

The policy also addressed its coverage of entities that insured parties indemnify. Specifically, a subpart of section I, entitled "[s]upplemental [p]ayments - coverages A and B," stated

---

[5] The policy also defined "Your product" as,

a.    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
      (1)    You;
      (2)    Others trading under your name; or
      (3)    A person or organization whose business or assets you have acquired; and
b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products . . . ."

in relevant part, that if Westport "defend[s] an insured against a 'suit' and an indemnitee of the insured is also named as a party to the 'suit'" then Westport must also "defend the indemnitee if all of the following [six] conditions are met."

The first of the six mandatory conditions, and the only one relevant to the within motions, provided that Westport will only defend an indemnitee of the insured in a

> . . .'suit' against the indemnitee [that] seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an '*insured contract*';[6]

(emphasis added). The indemnitee's fulfillment of this first

---

[6] The other five mandatory conditions were:

b.    The insurance applies to such liability assumed by the insured;
c.    The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same 'insured contract';
d.    The allegations in the 'suit' and the information we know about the 'occurrence' are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;
e.    The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such 'suit' and agree that we can assign the same counsel to defend the insured and the indemnitee; and
f.    The indemnitee:
    (1)    Agrees in writing to:
        (a)    Cooperate with us in the investigation, settlement or defense of the suit;
        (b)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the 'suit;'
        (©)    Notify any other insurer whose coverage is available to the indemnitee; and
        (d)    Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and
    (2)    Provides us with written authorization to"
        (a)    Obtain records and other information related to the 'suit;'
        (b)    Conduct and control the defense of the indemnitee in such 'suit.'

condition therefore depends on whether there is an "insured contract" between the indemnitee and the insured.  According to the policy definitions, an "insured contract" was

> That part of any other contract . . . pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization . . . .

The parties disagree as to whether an "insured contract" existed between the Town and the individual defendants and thus whether Westport has a duty to defend the individual defendants as indemnitees of the Town.

The policy excluded certain types of coverage.  For example, the "Employer's Liability" exclusion ("employer's liability exclusion") stated, in pertinent part, that "insurance does not apply to:"

> 'Bodily injury' to:
> (1) An 'employee' of the insured arising out of and in the course of:
>     (a)  Employment by the insured; or
>     (b)  Performing duties related to the conduct of the insured's business . . . .

The parties disagree as to whether this exclusion precludes coverage of an additional insured in suit brought by an employee of the named insured.

The policy also included a provision entitled "Separation of Insureds" ("severability of interests provision") that addressed

9

interpretation of the policy when there is more than one insured.
Specifically, the severability of interests provision provided,
in relevant part, "this insurance applies:"

    a.   As if each Named Insured were the only Named
         insured; and
    b.   Separately to each insured against whom claim is
         made or "suit" is brought.

The defendants argue that in light of this provision, the
employer's liability exclusion does not preclude coverage of the
Town or the individual defendants with regard to the underlying
state action.

### The Hauling Contract

On or about May 29, 2000, four months after the policy
became effective, the Town and John's Refuse entered into a "Haul
of Corrugated Cardboard Contract"("the hauling contract").
Specifically, the hauling contract provided that between July 1,
2000 and June 30, 2001, John's Refuse would take containers of
cardboard from the Town's recycling facility "and haul them to
Marcus Paper Company in West Haven, CT."

The hauling contract also included a provision requiring
John's Refuse to name the Town as an additional insured on its
general commercial liability policy.  Specifically, section VI of
the hauling contract provided that John's Refuse,

    shall provide . . . General Liability Insurance
    coverage of one million dollars ($1,000,000) C.S.L. for
    Bodily Injury . . . per occurrence, and shall save
    harmless the Town of Branford from all suits or actions
    brought against it for, or on account of, any injuries

10

> received or sustained by any party or parties by or
> from [John's Refuse], or the servants or agents or
> subcontractors of [John's Refuse], or in the
> performance of the obligations of [John's Refuse] under
> the contract.

The hauling contract also provided that the Town "shall be listed as an additional insured on said [insurance] policies."

### The Underlying State Action

On March 18, 2002, one John Barone, an employee of John's Refuse, filed an action for damages in Connecticut superior court against the Town, Hall, Masotta, and Woodford ("underlying state action"). Specifically, the complaint names Hall, Masotta, and Woodford individually and alleges that the Town is "jointly liable to" Barone "[p]ursuant to C.G.S. § 7-465." The complaint does not name John's Refuse as a defendant.[7]

Barone brought the underlying state action pursuant to common law tenets concerning negligence. Specifically, Barone alleged that on or about November 1, 2000, ten months after the policy became effective and five months after the Town and John's Refuse entered into the hauling contract, Barone, acting in his capacity as an employee of John's Refuse and in furtherance of the hauling contract between John's Refuse and the Town, "picked up a container/dumpster filled with scrap and waste cardboard from" the Town's recycling center. The complaint alleged that

---

[7] The defendants request that the court "take judicial notice that John's Refuse Removal, Inc. is an intervening plaintiff in the underlying action."

the container "had been packed by the Town of Branford, its[]
agents, servants, and/or employees."  The complaint further
alleged that Barone then transported the container to the Marcus
Paper Company in West Haven, Connecticut.  At the Marcus Paper
Company, Barone alleged, he "began offloading the [c]ontainer and
upon unpinning the door handle, suddenly and without warning, the
door flew open striking" Barone "in the head and face, causing
him serious injuries and damages . . ."

Barone alleged that Hall, Masotta, and Woodford, were
negligent in "any one or more of the following ways:"

>  a.  In that they allowed scrap and waste cardboard to
>      be packed into the Container under high pressure
>      creating a risk that persons opening the dumpster
>      particularly the plaintiff, would be subjected to
>      physical injury;
>
>  b.  In that they failed to warn the plaintiff that the
>      Container had been packed with wastepaper under
>      high pressure creating a risk of injury to persons
>      opening the door to said Container;
>
>  c.  In that they allowed the pressure in the Compactor
>      to be set high which created a risk of injury to
>      persons such as the plaintiff when opening the
>      said Container;
>
>  d.  In that they allowed the pressure in the Compactor
>      to be set at pressures above the specifications
>      called for in the compactor operations manual thus
>      creating high pressure in the Container which
>      created a risk of injury to persons, such as the
>      plaintiff opening the Container.

Furthermore, the underlying complaint alleged that the Town "is
jointly liable to the plaintiff for all damages, injuries and
losses sustained by the plaintiff as a result of this accident."

12

The complaint contained no allegation that John's Refuse was negligent.

As to damages, Barone alleged that the Town, Hall, Masotta, Woodford are liable for, inter alia, physical injuries, "memory loss," "pain and suffering," medical expenses, past and future "miss[ed] time from work," and diminished "earning capacity."

The Town and its former insurer, Legion, subsequently demanded that Westport defend and indemnify the Town, Hall, Masotta, and Woodford in Barone's underlying state action. Westport responded that it has no duty to defend or indemnify, but Westport "agreed to share in providing a defense to the Town and its agents" in the underlying state action "subject to reservation of Westport's rights under the policy."

On October 17, 2002, seven months after Barone commenced the underlying state action, Westport filed the complaint in this action seeking a declaratory judgment determining the "existence and applicability" of the policy's coverage to the defendants in the underlying state action. On October 29, 2004, CIGA filed a counterclaim against Westport seeking a declaratory judgment declaring, inter alia, that the policy provides coverage to the Town and the individual defendants with respect to the underlying state action.

**STANDARD**

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In determining whether the record presents genuine issue for trial, the court must view all inferences and ambiguities in a light more favorable to the non-moving party.  See Bryant v. Maffacci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 112 S. Ct. 152 (1991).  A plaintiff raises a genuine issue of material fact if the "jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis original).  The Supreme Court has noted that:

> Rule 56 must be construed with due regard not
> only for the rights of persons asserting claims
> and defenses that are adequately based in fact
> to have those claims and defenses tried to a
> jury, but also for the rights of persons opposing
> such claims and defenses to demonstrate in
> the manner provided by the rule, prior to
> the trial, that the claims and defenses have
> no factual basis.

Celotex v. Catrett, 477 U.S. 317, 327 (1986). "One of the principal purposes of the summary judgment rule is to isolate and

14

dispose of factually unsupported claims. . . [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 312, 323-24 (1986).

**DISCUSSION**

**I.    Duty to Defend[8]**

Westport first argues that it does not have a duty to defend the Town or the individual defendants in the underlying state action because: (1) neither the Town nor the individual defendants are additional insureds under the policy because the liability that the underlying action alleges did not "arise out of" the work, product, or property of John's Refuse; and (2) the employer's liability exclusion precludes coverage for the Town and the individual defendants in the underlying state action. The defendants, in contrast, argue that Westport has a duty to defend the Town and the individual defendants in the underlying state action because: (1) they are additional insureds under the policy because the alleged negligence arose out of the work of John's Refuse; and (2) the employer's liability exclusion does not apply to the underlying action because the policy includes a severability of interests provision.

---

[8]  The parties memoranda address the duty to indemnify and duty to defend simultaneously.  The court will first address the duty to defend and then address the duty to indemnify.

15

The Connecticut supreme court has noted repeatedly that "an insurer's duty to defend . . . is determined by reference to the allegations contained in the [underlying] complaint." Schilberg Integrated Metals Corp. v. Continental Casualty Co., 263 Conn. 245, 256-57 (2003)(quoting Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, 247 Conn. 901, 807 (1999)). If "an allegation of [a] complaint falls *even possibly* within the coverage, then the [insurer] must defend the insured." R.T. Vanderbilt Co., Inc. v. Continental Casualty Co., et al, 2005 WL 891366, at *8 (Conn. Apr. 26, 2005)(emphasis added; citations omitted; internal quotation marks omitted). However, "if the complaint alleges a liability that the policy does not cover, the insurer is not required to defend." Smedley Co. v. Employers Mut. Liability Ins. Co. of Wisc., 143 Conn. 510, 516 (1956).

To determine the scope of Westport's duty to defend, the court must therefore determine whether any of the underlying complaint's allegations fall even possibly within the policy's coverage. To do so, the court must first address the scope of the policy's coverage.

**A.    Standard for Interpreting an Insurance Policy**

"[T]he proper construction of a policy of insurance presents a question of law" that is proper for the court to determine on motion for summary judgment. QSP, Inc., et al. v. The Aetna Casualty and Surety Co., et al., 256 Conn. 343, 352

16

(2001)(quoting <u>Springdale Donuts, Inc. V. Aetna Casualty & Surety Co. of Illinois</u>, 247 Conn. 901, 805-06 (1999)). Connecticut courts interpret insurance contracts pursuant to a "well-settled" standard. <u>QSP, Inc., et al. v. The Aetna Casualty and Surety Co., et al.</u>, 256 Conn. 343, 351 (2001). Specifically, a court's construction of an insurance policy "involves a determination of the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy." <u>Id</u>. <u>See also</u> <u>R.T. Vanderbilt Co., Inc. v. Continental Casualty Co., et al.</u>, 2005 WL 891366, at *5 (Conn. Apr. 26, 2005).

When interpreting an insurance policy, the court looks at the policy "in its entirety." <u>QSP, Inc., et al. v. The Aetna Casualty and Surety Co., et al.</u>, 256 Conn. 343, 352 (2001). "If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." <u>R.T. Vanderbilt Co., Inc. v. Continental Casualty Co., et al.</u>, 2005 WL 891366, at *5 (Conn. Apr. 26, 2005)(internal quotation marks and citation omitted). In contrast, if the court determines that the terms of the insurance policy are ambiguous, the court must construe "any ambiguity in the terms . . . in favor of the insured." <u>QSP, Inc., et al. v. The Aetna Casualty and Surety Co.,</u>

17

et al., 256 Conn. 343, 352 (2001). A policy term is ambiguous if "without violence" the term is "susceptible to two [equally reasonable] interpretations . . ." R.T. Vanderbilt Co., Inc. v. Continental Casualty Co., et al., 2005 WL 891366, at *5 (Conn. Apr. 26, 2005)(internal quotation marks and citation omitted).

**B.    Duty to Defend the Town**

**1.    Additional Insured Endorsement: "Arising Out Of"**

The first issue in deciding whether Westport has a duty to defend the Town is whether the Town possibly falls within the policy's definition of an additional insured for purposes of the underlying state action. Westport argues that the underlying complaint fails "to allege any facts which would bring Barone's injuries within the coverage of the policy" because "the [underlying] complaint fails to allege that the injuries sustained by Barone *arose out of* the work or operations performed by John's Refuse . . ."(emphasis added). Furthermore, Westport argues the underlying complaint does not contain any allegations that John's Refuse was negligent. The defendants, in contrast, argue that the Town "is an [i]nsured" under the policy because "the underlying complaint . . . states a liability 'arising out of' the operations of John's Refuse . . . or, in the alternative, 'arising out of' the work or products of John's Refuse . . ."(capitalization removed). The court agrees with the defendants.

18

The policy's additional insureds provision states that in addition to John's Refuse, the policy also insures "[a]ny . . . organization . . . that has obligated you [John's Refuse] by written contract to provide the insurance that is afforded by this policy."  However, the policy covers such additional insureds "*only* with respect to liability *arising out of* 'Your work', 'Your product' and to property owned or used by you"(emphasis added).  The parties agree that the Town obligated John's Refuse by written contract to provide insurance.  The issue that the court must decide, therefore, is whether the underlying allegations possibly constitute "liability arising out of" John's Refuse's "work", "product," or "property."

Courts generally interpret the scope of additional insureds provisions containing the phrase "arising out of" in one of two ways.[9]  The minority reading of such provisions limits coverage of additional insureds to when a plaintiff seeks to hold the additional insured vicariously liable for the named insured's acts. See e.g. G.E. Tignall & Co., Inc. v. Reliance Nat'l Ins. Co., 102 F. Supp. 2d 300 (D. Md. 2002)(applying Maryland law); Granite Constr. v. Bitumious Ins. Co., 832 S.W.2d 427 (Tex.App. 1992)(holding that subcontractor employee's negligence suit

---

[9] The issue of whether a policy covers "claims for damages caused by the additional insured's own negligence" is a common question in insurance policy interpretation.  See Douglas R. Richmond, The Additional Problems of Additional Insureds, 33 Tort and Ins. Law J. 945, 956 (1998).

against construction company was not a claim "arising out of operations" performed by the subcontractor).  If the court were to follow this reasoning, the policy's additional insureds provision would limit coverage of the Town as an additional insured to these situations where a plaintiff seeks to hold the Town vicariously liable for the acts of John's Refuse.

The majority of courts, however, adopt a broader interpretation of the phrase "arising out of."[10]  Specifically, these courts reason that "the language arising out of [is] too broad to be restricted solely" to when a plaintiff seeks to hold an additional insured vicariously liable for the negligence of a named insured.[11]  Gary D. Nelson, 'Additional Insured' Endorsements, 24 The Brief 29, 65 (1995).  These courts hold that additional insureds provisions containing limiting language such as "arising out of the work" or "arising out of [your]

_____

[10] Commentators have called the approach of broadly construing such additional insured language "[t]he emerging majority approach." The Construction Industry: Coverage Issue Created by Claims Against Additional Insureds, 28 The Brief 8, 11 (1999). See also Douglas R. Richmond, The Additional Problems of Additional Insureds, 33 Tort and Ins. Law J. 945, 958 (1998).

[11] One commentator observed, "unless the 'additional insured' endorsement contains specific language limiting coverage to the additional insured on account of the 'acts or omissions' or the 'negligence' of the named insured, the coverage will be broadly construed by the court." Gary D. Nelson, 'Additional Insured' Endorsements, 24 The Brief 29, 72 (1995) (emphasis added).  In particular, "[l]anguage in the standard forms that attempts to limit liability to exposure 'arising out of' the negligence of the named insured will provide broad protection to the additional insured, as long as there is some nexus between the injury and the activities of the named insured." Id.  Especially relevant to the within motions, "If the injured party is an employee of the named insured and the 'arising out of' language is used, it is almost certain that coverage will be extended to the additional insured for both defense and indemnity provisions." Id. (emphasis added).

operations" may still provide coverage to additional insureds even when the underlying complaint does not allege that the named insured was negligent. <u>See e.g.</u>, <u>Marathon Ashland Pipe Line LLC, et al. v. Maryland Casualty Co.</u>, 243 F.3d 1232 (10th Cir. 2001)(applying Wyoming law; concluding "arising out of your ongoing operations" is ambiguous; finding coverage of additional insured even though underlying complaint did not contain allegations of negligence against named insured); <u>Merchants Ins. Co. of N.H. v. United States Fidelity and Guaranty Co.</u>, 143 F.3d 5, 10 (1st Cir. 1998)(applying Massachusetts law; holding "arising out of 'your work'" covers additional insured "*both* for its *own* negligence and to the extent that it might be deemed vicariously liable for" the named insured's negligence)(emphasis added); <u>McIntosh v. Scottsdale Ins. Co.</u>, 992 F.2d 251, 254 (10th Cir. 1993)(applying Kansas law; concluding "arising out of operations" is ambiguous and holding liability arose out of named insured's operations even though there was no allegation of negligence against named insured); <u>Roy Anderson Corp., et al. v. Transcontinental Ins. Co., et al.</u>, 358 F. Supp. 2d 553 (S. D. Miss. 2005)(holding "arising out of your work" is ambiguous and covers additional insured even without allegations of negligence against named insured); <u>Edwards v. Brambles Equip. Servs. Inc.</u>, 2002 WL 31001835, at *5(E. D. La. Sept. 4, 2002)(not reported)(applying Louisiana law; noting "[i]t is well settled

21

that a limitation on liability, such as 'arising from the
insured's operations' or 'arising from insured's work' . . . will
nevertheless provide coverage to an additional insured even if
the additional insured is solely negligent"); Fireman's Fund Ins.
Co. v. Atlantic Richfield Co., 115 Cal. Rptr. 2d 26, 30 (Cal. Ct.
App. 2000)(holding "arising out of Your Work" covers additional
insured "without regard to whether the injury was caused by the
named insured").

     For example, in Merchants Ins. Co. of N.H. v. United States
Fidelity and Guaranty Co., 143 F.3d 5 (1st Cir. 1998), the First
Circuit Court of Appeals addressed the scope of an additional
insureds provision almost identical to the one here.   In
Merchants, a subcontractor's insurance policy provided coverage
to a general contractor as an additional insured "but only with
respect to liability arising out of 'your [named insured's] work'
for that [additional] insured by or for you [named insured]."
Id. at 7.  An employee of the subcontractor brought a negligence
action against the general contractor alleging that he "sustained
serious injuries while working at the job site when a [general
contractor's] employee accidentally caused [the plaintiff's] arm
to become pinned between two pieces of demolition equipment." Id.
The general contractor sought coverage as an additional insured
under the subcontractor's policy.  The court concluded, applying
Massachusetts law, that even though the plaintiff had not alleged

that the named insured subcontractor was negligent, the general contractor was nevertheless entitled to coverage as an additional insured.

Specifically, the <u>Merchants</u> court concluded that the term "arising out of" required "a level of causation" between the named insured subcontractor's work and the plaintiff's injury that lies "between proximate and actual [but for] causation." <u>Merchants Ins. Co. of N.H. v. United States Fidelity and Guaranty Co.</u>, 143 F.3d 5, 9 (1st Cir. 1998).  Applying this intermediate causal standard, the court held that the plaintiff's injury "'arose out of' [the named insured subcontractor's] work in the sense that the harm occurred while [the plaintiff] was . . .[performing] a task that was assigned to [the named insured subcontractor]." <u>Id.</u> at 9.  Therefore "the injury was a consequence of the work that" the named insured subcontractor "was performing" at the time he sustained his injury. <u>Id.</u> at 10.

The Connecticut supreme court has not specifically addressed the scope of the phrase "arising out of your work" in an additional insureds provision.  As a federal court with diversity jurisdiction over this action, the court must predict how the Connecticut supreme court would hold on this issue and apply the law accordingly.  <u>See</u> <u>In re MTBE Prods. Liab. Litig.</u>, 2005 WL 906322, at *3(S.D.N.Y. April 20, 2005)(noting "[i]n the absence of a definitive ruling by the highest court of a particular

state" a federal court must "predict what that [state supreme]
court would decide if presented with the issue").  In predicting
how the Connecticut supreme court would construe the phrase
"arising out of" in an additional insureds provision, the court
looks for guidance to past Connecticut supreme court decisions,
lower court rulings, and recent developments in the law from
other jurisdictions.

    Although the Connecticut supreme court has not addressed the
phrase "arising out of" in the context of an additional insureds
provision, the supreme court has interpreted the phrase in the
context of a clause defining the scope of coverage for liability
"arising out of" advertising injury or personal injury.[12]  In QSP
v. Aetna Casualty and Surety Co., et al., 256 Conn. 343 (2001),
the Connecticut supreme court concluded that "the term 'arising
out of' is very broad." Id. at 373-74.  The court did not adopt
the interpretation of "arising out of" that requires a showing of
proximate causation.  Rather, the court explained that "for
liability . . . to be said to 'arise out of'" an event, the party
seeking coverage need only show that "the accident or injury 'was
connected with,' 'had its origins in,' 'grew out of,' 'flowed

_____

[12] In QSP v. Aetna Casualty and Surety Co., et al., 256 Conn. 343
(2001), the Connecticut supreme court held that "the relevant policy language
cover[ed] 'personal injury' and 'advertising injury' arising out of
defamation, disparagement, malicious prosecution or unfair competition." Id.
at 373(emphasis in original).  Specifically, the policy stated, "Any
'advertising injury' . . . must arise out of an enumerated tort and be
committed in the course of advertising." Id. at 374 (emphasis in original).

24

from,' or 'was incident to'" the event. <u>QSP v. Aetna Casualty and Surety Co., et al.</u>, 256 Conn. 343, 374 (2001)(quoting <u>Hogle v. Hogle</u>, 167 Conn. 572, 577 (1975)).

In light of the Connecticut supreme court's broad definition of "arising out of" in <u>QSP</u>, the court concludes that the Connecticut supreme court would reject limiting coverage of additional insureds in policies containing the phrase "arising out of" to vicarious liability actions.  Rather, the Connecticut supreme court would adopt the majority's broader interpretation of the phrase "arising out of."  The Connecticut supreme court would hold, as the First Circuit did applying Massachusetts law, that in the context of an additional insureds provision "'arising out of' denotes a level of causation that lies between proximate causation and actual [but for] causation." <u>Merchants Ins. Co. of N.H. v. United States Fidelity and Guaranty Co.</u>, 143 F.3d 5, 9(1st Cir. 1998).  Therefore "it is sufficient" for the party seeking additional insured status "to show only that the accident or injury" alleged in the underlying complaint "'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to'" the named insured's work, product or property. <u>QSP v. Aetna Casualty and Surety Co., et al.</u>, 256 Conn. 343, 374 (2001). <u>See also</u> <u>Board of Educ. v. St. Paul Fire & Marine Ins. Co.</u>, 261 Conn 37, 48 (2002).

Here, the underlying complaint alleges that "[a]t all times mentioned" in the complaint, Barone "was an employee of John's Refuse."  The complaint recounts actions that Barone took as an employee of John's Refuse in fulfillment of John's Refuse's hauling contract with the Town.  Specifically, he "picked up a container/dumpster filled with scrap waste and cardboard" and hauled it to West Haven as part of his duties as an employee of John's Refuse.  The underlying injury to Barone was "'connected with'" his work hauling refuse for John's Refuse in that the injury occurred while Barone was performing a task on behalf of John's Refuse.  As such, Barone's injury "was incident to" the work that John's Refuse performed in fulfillment of its contract with the Town.  Accordingly, the "allegations of the [underlying] complaint . . . [are] sufficient to bring" the liability "within the purview of the policy." Board of Educ. of the City of Bridgeport v. St. Paul Fire and Marine Ins. Co., 261 Conn. 37, 45 (2002).

Furthermore, this interpretation and application of "arising out of" is in keeping with the well-settled principle of Connecticut law that the court must construe "coverage ambiguities in favor of the insured." QSP v. Aetna Casualty and Surety Co., et al., 256 Conn. 343, 374 (2001).  The "existence of both a narrow and a broad definition of [a] term imports ambiguity into the meaning of the term." R.T. Vanderbilt Co.,

26

Inc. v. Continental Casualty Co., et al., 2005 WL 891366, at *5
(Conn. Apr. 26, 2005).  When "two equally reasonable definitions
of the term . . . exist, the broad definition must, in
preference, be adopted because it will sustain the claim and
cover the loss." R.T. Vanderbilt Co., Inc. v. Continental
Casualty Co., et al., 2005 WL 891366, at *5 (Conn. Apr. 26,
2005).

　　　Here, as explained above, the term "arising out of" is
susceptible to both a narrow and broad definition.  Accordingly,
the court concludes that the term "arising out of" in an
additional insureds provision is ambiguous as to whose negligence
the policy covers. Accord Marathon Ashland Pipe Line LLC, et al.
v. Maryland Casualty Co., 243 F.3d 1232 (10th Cir. 2001);
Merchants Ins. Co. of N.H. v. United States Fidelity and Guaranty
Co., 143 F.3d 5 (1st Cir. 1998); McIntosh v. Scottsdale Ins. Co.,
992 F.2d 251, 254 (10th Cir. 1993); Shell Oil Co. v. AC&S, Inc.,
649 N.E.2d 946 (Ill. App. Ct. 1995).  As a result of this
ambiguity, the court must construe the phrase in favor of
covering the Town as an additional insured.

### 2.　　Employer's Liability Exclusion

　　　Westport next argues that even if the Town is an additional
insured for purposes of the underlying state action, the policy's
employer's liability exclusion still precludes coverage.
Specifically, Westport argues, "John's Refuse is the named

insured under the policy, Barone's claim for bodily injury constitutes a claim of bodily injury to the insured" and therefore "this claim will be excluded" pursuant to the employer's liability exclusion. The defendants, in contrast, argue that because the policy includes a severability of interests provision, the employer's liability exclusion "has no application to a claim of bodily injury by John Barone against the Town of Branford, where John Barone was not an employee of the Town of Branford." The court agrees with the defendants.

In Sacharko v. Center Equities Ltd. Partnership, 2 Conn. App. 439 (1984), the Connecticut appellate court addressed an insurer's duty to defend an additional insured in a suit brought by an employee of the named insured. As here, the policy contained an employer's liability exclusion, excluding coverage for "injury to any employee of the [i]nsured arising out of and in the course of his employment by the [i]nsured." Id. at 443 n.4. As here, the policy also contained a severability of interests provision, providing that the "insurance afforded applies separately to each [i]nsured . . ."(emphasis added). Id. at 443 n.5. The issue before the court was whether, in light of the severability of interests provision, the employer's liability exclusion barred an employee of a named insured from suing an additional insured.

28

The court concluded that "because the policy contained a severability of interests provision," the insurer could "not use the employee exclusion clause as a basis for abandoning its duty to defend" the additional insured in an action by an employee of the named insured. Sacharko v. Center Equities Ltd. Partnership, 2 Conn. App. 439, 443 (1984). When a "policy contains a severability of interests clause, it is a recognition by the insurer that it has a *separate and distinct* obligation to each insured under the policy . . ." Id. at 444 (emphasis added). Accordingly, the employer's liability exclusion only precludes "employees of the insured who seeks protection under the policy" from suing that insured. Id. In sum, "the test of whether the employee's exclusion clause precludes coverage must be applied to each insured *separately* and not to all collectively." Id. (emphasis added). Accord Truck Ins. Exchange v. BRE Properties, Inc., 119 Wash. App. 582, 591 (Wash. Ct. App. 2003)(noting when policy contains employer's liability exclusion and "severability clause" "each insured is entitled to read the policy as if applying only to one insured").

Applying the law here, the employer's liability exclusion does not preclude coverage of the Town with respect to the underlying state action. The employer's liability exclusion provides that "insurance does *not* apply to" (emphasis added):

'Bodily injury' to:

(1)  An 'employee' of the insured arising out of and in
     the course of:
     (a)  Employment by the insured; or
     (b)  Performing duties related to the conduct of
          the insured's business . . . .

Where, as here, there is more than one insured, it may not be

clear whether the exclusion precludes coverage in actions brought

by employees of one insured against another insured.  However,

the policy also contains a severability of interests provision

that provides, in relevant part, that when there is more than one

insured the policy applies "[s]eparately to each insured against

whom claim is made or 'suit' is brought."

Reading the employer's liability exclusion as if the

exclusion applies separately to each insured, the employer's

liability exclusion only bars coverage of the Town in suits

brought by employees of the Town.  It does not bar coverage of

the Town in suits brought by employees of another insured, i.e.

John's Refuse.  Here, the Town seeks coverage in a suit brought

by an employee of John's Refuse.  Accordingly, the employer's

liability exclusion does not bar the Town from obtaining coverage

with regard to the underlying state action.

### 3.    Duty to Defend the Town: Conclusion

Having concluded (1) the Town is an additional insured for purposes of the underlying state action because the allegations in the complaint arise out of the work of John's Refuse, and (2) the employer's liability exclusion does not preclude coverage of the Town in the underlying state action, the court concludes that as a matter of law the allegations in the underlying complaint fall within the policy's coverage.  Accordingly, Westport has a duty to defend the Town in the underlying state action.

### C.    Duty to Defend Individual Defendants

Both parties agree that neither the additional insured endorsement nor the general liability enhancement endorsements address "the issue of coverage for the employees of the Town." The policy does, however, contain a provision regarding coverage of parties that the Town indemnifies.  Specifically, the policy states that if Westport "defend[s] an insured against a 'suit' and an indemnitee of the insured is also named as a party to the 'suit'" then Westport will also "defend the indemnitee if all of the following [six] conditions are met."  The only relevant mandatory condition provides that Westport will only defend an indemnitee of the insured in a

> . . .'suit' against the indemnitee [that] seeks damages
> for which the insured has assumed the liability of the
> indemnitee in a contract or agreement that is an
> 'insured contract[.]'

31

(emphasis added).  Therefore Westport must defend the individual defendants only if the Town has assumed the liability of the individual defendants in "a contract or agreement that is an 'insured contract.'"

The parties disagree as to whether an "insured contract" existed between the Town and the individual defendants and thus whether Westport has a duty to defend the individual defendants as indemnitees of the Town.  Westport argues that it owes no duty to defend the individual defendants because the Town "has not assumed the liability of the town employees in a contract or agreement that is an 'insured contract.'"  The defendants, in contrast, argue that the Town's "statutory indemnity obligation" to its employees pursuant to Conn. Gen. Stat. § 7-465[13] "satisf[ies] the [policy's] requirement of an 'insured contract'" and "creates protection for the Town employees under that policy."  The court, however, agrees with Westport.

---

[13] Conn. Gen. Stat. § 7-465 provides, in relevant part:

(a) Any town . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law . . . for physical damages to person . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damages was not the result of any wilful or wanton act of such employee in the discharge of such duty . . . .

Conn. Gen. Stat. § 7-465(a).

No Connecticut court has addressed the definition of an "insured contract," let alone the issue of whether a statutory duty to indemnify constitutes an "insured contract."  Therefore, the court must again predict how the Connecticut supreme court would rule.  This task is all the more difficult because there is little case law in other jurisdictions on the definition of "insured contract."  After reviewing the case law and commentary that does exist, the court concludes that there was not an "insured contract" between the Town and the individual defendants.

"[T]o be an insured contract, the agreement at issue must fall within the specific policy definition" of "insured contract."  Douglas R. Richmond & Darren S. Black, Expanding Liability Coverage: Insured Contracts and Additional Insureds, 44 Drake L. Rev. 781, 784 (1996).  The policy here defines "insured contract" as

> That part of any other contract . . . pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization . . . .

The few cases that address the definition of "insured contract" in the context of employment contracts focus on whether the insured actively "assume[d]" the employee's tort liability to pay for bodily injury to a third party. See e.g. Lewis v. Hamilton,

652 So.2d 1327 (La. 1995).

The highest court to address the definition of "insured contract" in the context of an employment relationship is the Supreme Court of Louisiana.  In Lewis v. Hamilton, 652 So.2d 1327 (La. 1995), the court addressed the issue of "whether the employment relationship between the employer [a municipal school board] and the employee constituted an 'insured contract' as defined in the employer's policy." Id. at 1328.  The policy before the Louisiana court contained the same definition of "insured contract" as the policy here.  The insurer of the municipal school board sought coverage for its employee arguing that because the Louisiana Civil Code automatically "render[ed] an employer liable for torts of its employee" there was therefore an "insured contract" between an the employee and the school board.

The court, however, rejected the insurer's argument that the Code satisfied the requirement of an "insured contract."  In holding that the Code's imposition of an indemnification duty did not constitute an "insured contract," the court focused on the word "assume" in the definition of "insured contract." Specifically, the court held that "the word 'assume' . . . requires some exercise of volition on the part of the insured to undertake or incur liability which did not exist prior to the assumption." Id. at 1330.  The court reasoned that "[i]t was the

34

*law* governing [the status of the school board as employer], and not any contractual assumption of liability, which made the [s]chool [b]oard liable for the employee's tort." <u>Lewis v. Hamilton</u>, 652 So.2d 1327, 1330 (La. 1995). <u>See also</u> <u>Brooks v. Colton</u>, 760 A.2d 393, 395 (Pa. Super. Ct. 2000)(holding municipal collective bargaining agreement did not constitute "insured contract" even though state statute imposed a duty on local agencies to indemnify employees).

One of the few commentators on the definition of "insured contracts" also emphasizes the significance of the word "assume" in the definition of "insured contract." Specifically, "a contract or agreement must expressly provide for the insured's assumption of the other party's liability in order to be an insured contract." Douglas R. Richmond & Darren S. Black, <u>Expanding Liability Coverage: Insured Contracts and Additional Insureds</u>, 44 Drake L. Rev. 781, 790 (1996)("Richmond and Black").

The court finds the reasoning of the Louisiana supreme court persuasive.[14] The statutory imposition of the duty to indemnify does not constitute an insured contract under which the Town

---

[14] The defendants argue that the cases holding that "a statutory indemnity obligation cannot satisfy the policy requirement of an 'insured contract" are not persuasive here because the cases did "not arise in the context of a supplementary payments provision and fail[] to recognize that Connecticut's statute engrafts employee indemnification as a benefit of the employment contract." The defendants, however, cite no support, nor can the court find any, for the proposition that a statutory duty to indemnify constitutes an "insured contract." Furthermore, the defendants have failed to explain to the court why the fact that the pertinent reference to "insured contract" is located in the supplementary payments provision is significant to the court's analysis.

assumed the liability of the individual defendants.  Because an
"insured contract" did not exist between the individual
defendants and the Town, Westport does not have a duty to defend
the individual defendants in the underlying state action.

## II.  Duty to Indemnify Town and Individual Defendants

Having concluded that Westport has a duty to defend the Town
but does not have a duty to defend the individual defendants, the
court now addresses whether Westport has the duty to indemnify
either.  Westport argues that it does not have a duty to
indemnify the Town and the individual defendants.  The
defendants, however, argue that Westport does have a duty to
indemnify the Town and the individual defendants.

The duty to indemnify is more limited than the duty to
defend.  Specifically, "while the duty to defend depends only on
the allegations made against the insured, the duty to indemnify
depends upon the facts established at trial and the theory under
which judgment is actually entered in the case." DaCruz v. State
Farm Fire & Casualty Co., 268 Conn. 675, 687-88 (2004)(quoted in
Devino v. Maryland Casualty Co., et al., 2004 WL 1965788, at *3
(Conn. July 30, 2004)). See also Schilberg Integrated Metals
Corp. v. Continental Casualty Co., 263 Conn. 245, 256-57 (2003);
Board of Educ. of the City of Bridgeport v. St. Paul Fire and
Marine Ins. Co., 261 Conn. 37, 48 (2002). "[T]he duty to
indemnify arises only if the evidence adduced at trial

establishes that the conduct actually was covered by the policy."
DaCruz v. State Farm Fire & Casualty Co., 268 Conn. 675, 688
(2004)(quoted in Devino v. Maryland Casualty Co., et al., 2004 WL
1965788, at *4 (Conn. July 30, 2004)).

The Connecticut Supreme Court in Board of Educ. v. St. Paul
Fire and Marine Ins. Co., 261 Conn. 37, 48 (2002) addressed the
relationship between the duty to defend and the duty to
indemnify. When "the negligent conduct alleged . . . [in the
underlying] complaint, if proven, would fall within the
parameters of coverage under the policy" the insurance company
has a duty to defend. Id. at 49. Only when the underlying
plaintiff establishes at trial that such negligence was the
proximate cause of the underlying plaintiff's injuries does the
insurer "have a duty to indemnify the plaintiff pursuant to the
policy." Id. On the other hand, "[b]ecause the duty to defend is
significantly broader than the duty to indemnify, where there is
no duty to defend, there is no duty to indemnify . . ." DaCruz v.
State Farm Fire & Casualty Co., 268 Conn. 675, 688
(2004)(internal citations and quotations marks omitted).

Here, the court has determined that the conduct alleged in
the complaint, if proven, would fall within the parameters of the
policy's coverage of the Town. Accordingly, if Barone
establishes at trial the negligence alleged in the complaint was
the proximate cause of his injuries, then Westport will have the

duty to indemnify the Town pursuant to the policy.  Westport does not, however, have a duty to indemnify the individual defendants because Westport does not even have a duty to defend the individual defendants.  See <u>DaCruz v. State Farm Fire & Casualty Co.</u>, 268 Conn. 675, 688 (2004).

### III. CIGA Exhaustion Requirement: Westport Policy is Primary

The defendants argue that Westport's coverage of the Town is primary to CIGA's coverage of the Town because pursuant to Conn. Gen. Stat. 38a-845 "any available coverage through a solvent insurer is primary to the obligations of" CIGA.  Westport does not respond.  The court agrees with the defendants.

As set forth above, CIGA is a "nonprofit unincorporated legal entity" established pursuant to the Connecticut law, see Conn. Gen. Stat. § 38a-839, for the purpose of taking over the responsibilities of insolvent insurance companies.  CIGA "assumes the liabilities of an insolvent insurer" however "*only after* the claimant has exhausted his rights under other available insurance policies."  <u>Harbor Ins. Co. v. Conn. Ins. Guaranty Assoc.</u>, 711 F. Supp. 70, 72 (D. Conn. 1989)(denying CIGA coverage for claimant's failure to exhaust other coverage)(emphasis added).

Specifically, Conn. Gen. Stat. § 38a-845(1) states, in relevant part:

> Any person having a claim against an insurer under any
> provision in an insurance policy, other than a policy
> of an insolvent insurer . . . *shall exhaust first his*
> *rights under such policy.*  Any amount payable on a

38

covered claim under said sections shall be reduced by
the amount recoverable under the claimant's insurance
policy . . .

Conn. Gen. Stat. § 38a-845(1)(emphasis added).  "This exhaustion
provision is apparently designed to limit [CIGA's] liability to
situations in which no other source of recovery for damages
exists."  Harbor Ins. Co. v. Conn. Ins. Guaranty Assoc., 711 F.
Supp. 70, 74 (D. Conn. 1989).

Pursuant to the CIGA exhaustion requirement, Conn. Gen.
Stat. § 38a-845(1), the Town must first exhaust its rights
pursuant to the Westport policy before seeking recovery from
CIGA.  In this sense, Westport's coverage of the Town is primary
to CIGA's coverage of the Town.

**IV.  Reimbursement of CIGA**

CIGA argues that it is entitled to reimbursement from
Westport for the funds that CIGA has expended on the defense and
indemnification of the Town and individual defendants.  Westport
does not respond.

"Where an insurer is guilty of breach of its contract to
defend, it is liable to pay the insured not only his reasonable
expenses in conducting his own defense but, in the absence of
fraud or collusion, the amount of a judgment obtained against the
insured up to the limit of liability fixed by the policy."  R.T.
Vanderbilt Co., Inc. v. Continental Casualty Co., et al, 2005 WL
891366, at *8 (Conn. Apr. 26, 2005)(citations omitted; internal

quotation marks omitted).  See also  Keithan v. Mass. Bonding &
Ins. Co., 159 Conn. 128, 139 (1970); Schurgast v. Schumann, 156
Conn. 471 (1968).

Here, the court has concluded that Westport has a duty to
defend the Town.  Westport has breached the contract of insurance
through its failure to defend the Town.  Accordingly, Westport
"is liable to pay" the "reasonable expenses" the Town or CIGA
have incurred "in conducting [the Town's] own defense." R.T.
Vanderbilt Co., Inc. v. Continental Casualty Co., et al, 2005 WL
891366, at *8 (Conn. Apr. 26, 2005).  Furthermore, Westport is
liable for "the amount of a judgment obtained against [the Town]
up to the limit of liability fixed by the policy." Id.  In
contrast, because the court has concluded that Westport does not
have a duty to defend or indemnify the individual defendants,
Westport is not liable for the expenses of defending or
indemnifying the individual defendants.

**CONCLUSION**

The court concludes: (1) Westport has a duty to defend the Town; (2) Westport does not have a duty to defend the individual defendants; (3) Westport has a duty to indemnify the Town but does not have a duty to indemnify the individual defendants;(4) Westport's coverage of the Town is primary to CIGA's coverage of the Town; and (5) Westport is liable for the reasonable expenses CIGA has incurred in defending and indemnifying the Town.

Accordingly, Westport's motion for summary judgment (document no. 41) is GRANTED in part and DENIED in part.  The defendants' motion for summary judgment (document no. 44) is GRANTED in part and DENIED in part.

It is so ordered this __ day of May, 2005 at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge

41